## BLANCHE O. JACKSON *v.* WALTER F. FORWOOD, ET AL.

[No. 113, October Term, 1945.]

*Decided May 14, 1946.*

Motion for reargument denied June 18, 1946.

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*William Pepper Constable* and *John D. Alexander,* with whom were *Harry D. Barnes, Harrison W. Vickers* and *Beck & Carvel* on the brief, for the appellant.

*Edward D. E. Rollins* and *Robert H. Archer,* with whom were *Stanley R. Bossard* and *R. Hynson Rogers* on the brief for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

A pedestrian plaintiff, in a suit for personal injuries against the operator and the owner of a taxicab, appeals from a judgment *n. o. v.,* entered after a jury had disagreed. The facts in the case are fully set out in appellant's brief, and as this statement is accepted by the appellees, we quote the parts of it pertinent to the issue before us: "On the night of November 23, 1943, at about 1 o'clock, Blanche O. Jackson, the appellant, aged thirty-nine years, was returning home from work at a war plant in a public passenger bus northbound on U. S. Route 222. After alighting from it at St. Marks Road, on which she lived, near Perryville, she was hit by the oncoming taxicab driven and owned by the appellees, Richard A. Grieninger and Walter F. Forwood, respectively, after she had walked past the front of the bus toward the west side of the road. It was a clear, dark night and the road was dry. Mr. Yates, the driver, stopped the bus on U. S. Route 222, facing north, close to its right shoulder with its front near the north side of St. Marks Road. This route was a boulevard highway with a macadamized surface twenty-two feet wide, and the posted Victory Speed limit was thirty-five miles

an hour. Its point of origin was U. S. Route 40 at Perryville and it ran northerly to Bainbridge Naval Station, Port Deposit, and beyond. The road was straight and there was a clear view of the intersection for 1,500 feet north of it. From that point the downgrade to within 800 feet of the intersection was 3 to 5 per cent. and for the remaining distance 1½ to 2 per cent. St. Marks Road had a graveled surface and intersected Route 222 from the west at less than a right angle but did not extend beyond it. Mrs. Boyd, who was also a passenger, and the appellant, in that order, alighted at the right front door of the bus and walked five feet forward on the narrow graveled shoulder intending to cross the highway in front of the standing bus. When at its right front headlight the appellant looked to the right and saw the headlights of the appellees' car approaching about 400 feet away to the north. Because the headlights of the approaching taxicab seemed so far away the appellant thought she had sufficient time to walk to the other side, she started to cross the road westerly in front of and to the left of the bus, preceded by Mrs. Boyd by three or four feet. After the appellant had cleared the bus she looked to her left for traffic and saw none and while proceeding across looked again to her right. The car, she said, bore down on her with such speed that she could not get out of its way. She was about two-thirds across the road or at about the middle of the southbound traffic lane, having walked fifteen or sixteen feet, when she was hit by the front of the oncoming southbound taxicab."

The defendants, at the conclusion of the whole case, offered two prayers for a directed verdict. The first related to their primary negligence, and the second to the contributory negligence of the plaintiff. Both prayers were rejected, and after the jury disagreed, a motion for a judgment *n. o. v.* was filed under the provisions of Trial Rule 8 (a), Rules of Practice and Procedure, Pt. 3, Subd. 3. This brings up both questions, primary negligence and contributory negligence.

The driver of the taxicab was on a boulevard highway, and his lights were on; but he said that when he was just getting ready to pass the bus, the lights of the latter were so blinding that he could not see "right at that point" until he got there. He said he was about twenty or thirty feet away from the bus when it blinded him the worst, and that is when he slowed up. But he did not apply his brakes until he saw the object in front of him, which turned out to be the appellant. At that time he was about ten or twelve feet from her. The evidence was that the skid marks caused by the brakes on the taxicab extended for over sixty feet. The officer said that he stepped them off and they were between sixty and sixty-five feet. The taxi driver said that he was only going fifteen to twenty miles an hour, but the length of the skid marks indicated a greater speed than that. The driver himself said he measured the marks the morning after the accident with a tape measure, and they were then forty-five feet three inches. Under this testimony, we think there could be drawn a reasonable inference that the driver did not have his car under control when he approached the bus with its blinding lights shining directly at him. Such an inference would justify the submission of the case to the jury on the question of the primary negligence of the defendants.

The motion for judgment *n. o. v.* was granted by the trial court on the ground of contributory negligence. If the appellant's negligence directly contributed to the happening of the accident, the negligence of the defendant as a contributing factor is immaterial. *Campbell & Sons v. United Railways,* 160 Md. 647, 154 A. 552; *National Hauling Contractors Company v. Baltimore Transit Company,* 185 Md. 158, 44 A. 2d 450. It is essential, therefore, to examine the testimony as to the appellant's actions, in order to determine whether it shows that she was also guilty of negligence.

The law of contributory negligence is well settled. It is ordinarily a question for the jury, but where the facts are undisputed, and are open to but one inference, it

is for the court to decide whether such facts show contributory negligence as a matter of law. *Nationdl Hauling Contractors Company v. Baltimore Transit Company, supra,* and cases there cited.

In determining whether the facts justify a holding that the plaintiff is guilty of contributory negligence as a matter of law, the test is also well settled. In the case of *Campbell & Sons v. United Railways,* 160 Md. 647, 154 A. 552, 553, it was said: "The formula long employed in this State to test the existence of contributory negligence as a matter of law is that the act to which that quality is ascribed must present some feature of reckless inattention or indifference so prominent and decisive in character that no room is left for ordinary minds to differ as to its imprudence."

In the case before us, we have the testimony of the plaintiff as to her actions after she left the bus until the moment she was struck.

"Q. Then tell what happened? A. Mrs. Boyd got out first and I got out right behind her, and we came around the bus to the right front headlight, and when I looked up the road towards Post Deposit, I seen this car approaching.

"Q. Where were you then? A. At the right front headlight of the bus, and I looked up the road.

"Q. Where did you get off; was it on the improved section of the road or the shoulder? A. I got off on the shoulder.

"Q. How close was the bus parked to the shoulder? A. Right close.

"Q. And the shoulder was composed of what kind of material. A. Gravel.

"Q. And you got off on the gravel and walked up to the right front of the bus? A. Yes, sir.

"Q. Then you looked where? A. To the right.

"Q. Which direction would that be? A. Towards Port Deposit.

"Q. Did you see anything? A. I seen a car coming down the road, which looked to be above Torbert's Store, but I interceded (proceeded) on across.

"Q. Do you know how far it was away ; Torbert's Store? A. Well, I imagine it could be about 400 feet up the road.

"Q. This car was just north of that? A. Just north of that, yes sir. I started on across the road and when I got to the left side of the bus, I looked to the left for traffic coming the other way, and seen none, and then I looked to my right. I had interceded (proceeded) across a little further, and when I did, the car was bearing down on me with such speed I couldn't get out of his road.

"Q. Then you turned and looked to the right, and the car was bearing down on you? A. Yes, sir.

"Q. Did it hit you? A. Yes, sir, it did.

"Q. You know where you were, what portion of the road you were on when you were struck? A. Right about the center of the south lane.

"Q. How far would that be across the road from where you started? A. About two-thirds of the way across the road.

"Q. After you were hit, you remember anything? A. No. sir, I do not."

This is all the testimony in the case which shows what the plaintiff did after she had reached the left front of the bus. No other witness testified to any different action by her, and therefore we must accept her testimony for the purpose of this appeal as undisputed. So considered, it shows that when she was in the right front of the bus she saw a car approaching 400 feet away, running in that part of the road which she had to cross. She then walked across the front of the bus, looked to her left, but kept on walking, and when she again looked to her right, she was in the path of the car that she had seen, and it was so close to her that she could not get out of the way. The court can reach but one conclusion

from these facts. It is that her actions contributed directly to the accident. Therefore, under the law she cannot recover, unless the defendants had the last clear chance to avoid the accident, and did not utilize it.

The appellant relies strongly upon the recent case of *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517. In that case we held that the contributory negligence of the plaintiff was a question for the jury. But there the facts were quite different, and the case is easily distinguished from the one now before us. The plaintiff, in that case, was not injured on a boulevard highway. She was in a cross-walk which the police department had plainly marked and designated in the middle of a block. There was some conflict in the plaintiff's testimony whether she had crossed over the white line in the middle of the street when she was struck, although she claimed it was still in front of her. After the accident the plaintiff was found lying on the center line, and there was evidence that the driver of the car which injured the plaintiff had crossed the white line and had struck her while he was partly on the wrong side of the street. In the case before us, the driver was in his own lane on a boulevard highway, and the evidence is clear and uncontradicted that the accident took place in about the middle of that lane after the appellant had left her place of safety and walked in front of the oncoming car. A consideration of the facts in each case shows clearly the distinction between them. In the Crunkilton case the evidence was such that rational minds might differ whether the plaintiff had been guilty of negligence directly contributing to the accident. In the case before us, no other reasonable inference can be drawn except that the appellant's actions did contribute to the unfortunate result.

We are unable to find, in the case, any evidence to warrant the application of the last clear chance doctrine. The driver of the taxicab said that he did not see the appellant until he was within ten or twelve feet from her. Then, from all the testimony in the case, he ap-

plied his brakes with great force, but this did not stop the car. No evidence was offered to show that the driver could have swerved to either side in the narrow road after he saw the appellant, and could thereby have avoided hitting her. What, if anything, he could have done, is, in view of the evidence, mere speculation. There is no particle of proof to indicate that the driver of the taxicab was negligent in anything he did after he saw the plaintiff in front of his car. And the doctrine of last clear chance can never be invoked when the plaintiff's own act is the last negligent act. *McNabb v. United Railways,* 94 Md. 719, 51 A. 421; *United Railways v. Sherwood Bros.,* 161 Md. 304, 157 A. 280; *National Hauling Contractors Co. v. Baltimore Transit Company, supra.*

As we find no error in the ruling of the majority of the trial court, the judgment will be affirmed.

*Judgment affirmed, with costs.*

DELAPLAINE, J., filed the following dissenting opinion:

In this case there are two questions: (1) Whether there was negligence of the taxicab driver, and (2) whether there was contributory negligence of the pedestrian.

First, I think there was sufficient evidence of primary negligence to justify submission of the case to the jury. The taxicab driver swore that, when he came around the curve about 1,500 feet away and saw the bus, he was driving at the rate of thirty-five miles per hour, and then gradually reduced his speed; but plaintiff swore that the car bore down upon her with such speed that she could not get out of its way. Officer Kisella of the State Police testified that the taxicab made skid marks sixty feet long extending from the hard surface to the shoulder. Excessive speed may be inferred from such testimony as that the brakes were applied too late, or that the car did not stop until it had gone an extraordinary distance after the brakes were applied. *Bozman v. State, Use of Cronhardt,* 177 Md. 151, 9 A. 2d 60. It

is true that excessive speed or even the violation of a statute by a driver will not of itself support an action for injuries sustained by a pedestrian, and the pedestrian can recover only by showing that the excessive speed or the act which constituted the violation of the statute was the proximate cause of the accident. *Sun Cab Co. v. Faulkner*, 163 Md. 477, 163 A. 194; *Chasanow v. Smouse*, 168 Md. 629, 178 A. 846. The road on which plaintiff was injured is a boulevard, on which it is unlawful to operate a motor vehicle at a rate of speed greater than fifty miles an hour "under any circumstances or conditions." Code, 1943 Supp., Art. 66½, Sec. 157 (d). It is also unlawful to operate a motor vehicle on any highway in the State at a greater speed than is reasonable and prudent under the conditions then existing. Code, 1943 Supp., Art. 66½, Sec. 157 (a). The statute declares that the fact that the speed of a motor vehicle is lower than the speed limit does not relieve·the driver from the duty to decrease speed when special hazard exists with respect to pedestrians or other traffic. Code, 1943 Supp., Art. 66½, Sec. 157 (e).

In this case the driver could see the bus at a distance of 1,500 feet, and the atmosphere was clear. The taxicab driver admitted (1) that for a short while the headlights of the bus blinded him until he got within ten or twelve feet of it, and (2) that it was not until he was ten or twelve feet away that he first saw plaintiff. In view of the fact that a large bus was standing in the road, it was a duty of the taxicab driver to keep his car under control in anticipation of the possibility that passengers had alighted from the bus and might be using the thoroughfare. The fact that the headlights on the motorbus may have made it more difficult for the driver to see did not relieve him from his obligation to use proper care to observe their presence. If he could not see them because of the glare of the headlights, he should have not only reduced the speed of his car but also given warning signals to any pedestrian who might possibly be exposed to the danger of collision. I think

it may reasonably be inferred that the driver was negligent from the testimony (1) that he failed to give any warning signal whatever of his approach, (2) that the car made skid marks sixty feet long, although the brakes were in very good condition, and (3) that the pedestrian was hurled a distance of thirty-six feet by the impact.

Secondly, I do not believe the pedestrian was guilty of contributory negligence as a matter of law. In order to sustain that ruling, it is necessary to determine that the evidence shows contributory negligence so unquestionably as to prevent any rational difference of opinion on the subject. If a pedestrian suddenly steps from a sidewalk between intersections into the path of an approaching automobile, and he either did not look or made no effort to avoid the automobile by stopping or stepping aside, although he could easily have seen it in time to have taken a position of safety, he is guilty of contributory negligence as a matter of law and is precluded from recovery for resulting injuries. *Thompson v. Sun Cab Co.,* 170 Md. 299, 184 A. 576; *Ebert Ice Cream Co. v. Eaton,* 171 Md. 30, 37, 187 A. 865. But as a general proposition, contributory negligence in an action for injuries sustained in a collision with a motor vehicle presents a question for determination by the jury. *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517, 520. The mere fact that a pedestrian, who has been struck by a motor vehicle, could have avoided the accident, does not necessarily mean that he is guilty of contributory negligence. It is not the province of the court to draw inferences and make deductions from evidence. To do that is peculiarly the province of the jury, which the court should not invade. To justify withdrawal of a case from the jury on the ground of contributory negligence, the evidence must show some act so decisively negligent as to leave no room for difference of opinion thereon by reasonable minds. Where there is a conflict of evidence as to material facts relied on to establish contributory negligence, or the act is of such a nature that reasonable minds may draw different conclusions after considering

all the circumstances surrounding the happening of the accident, it is for the jury to decide whether it constituted contributory negligence. *Henkelmann v. Metropolitan Life Insurance Co.,* 180 Md. 591, 597, 26 A. 2d 418; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517; *National Hauling Contractors Co. v. Baltimore Transit Co.,* 185 Md. 158, 44 A. 2d 450. Thus, it has been held that a pedestrian who starts across a street at a cross-walk at night and fails to see an automobile approaching a block away, and is struck near the opposite curb, is not guilty of contributory negligence as a matter of law. *Thomas v. Metzendorf,* 101 N. J. L. 346, 128 A. 162.

More than twenty years ago this court observed that many automobile drivers "act as if it is incumbent upon one traveling on foot to use an extraordinary degree of care in keeping out of the way of an automobile, or else be maimed or killed." But that, the court said, is not the law. *Merrifield v. C. Hoffberger Co.,* 147 Md. 134, 141, 127 A. 500, 502. Public highways are for the use of all, and the rights and duties of all persons lawfully using them are equal and reciprocal. *Holler v. Lowery,* 175 Md. 149, 159, 200 A. 353. The driver of a motor vehicle cannot operate it on the theory that every pedestrian must keep a constant lookout for cars regardless of how they are operated, and be prepared to jump in getting out of their way. *Mahan v. State, to Use of Carr,* 172 Md. 373, 383, 191 A. 575; *Crunkilton v. Hook,* 185 Md. 1, 42 A. 517, 521. The driver has no right to assume that the road is clear, but should be reasonably vigilant at all times and under all circumstances, and should anticipate the presence of pedestrians upon it. Nor does the law specify when or how often a pedestrian must look for approaching traffic. If he looks when he starts to cross the road, and the way seems clear, he is not obliged as a matter of law to look again. The law does not demand that a pedestrian, if he sees a car coming, must stop until it has passed. He may go forward unless it is close upon him, and if he is struck by the car the question whether he was negligent in going forward

is a question for the jury. If a pedestrian sees a car approaching and starts to cross the road before he enters its path, and observes it thereafter, but apparently misjudges its speed, he is not contributorily negligent as a matter of law. *Legum v. State, for Use of Moran,* 167 Md. 339, 351, 173 A. 565.

The case before us is not one where a person walks blindly into the path of a car when it is so near the only possible inference is that a collision could not have been avoided by the driver under any circumstances. The bus driver testified that the taxicab was approximately 400 feet away when Mrs. Jackson started across the road. If the car's rate of speed had been thirty-five miles an hour, it would have traveled 400 feet in eight seconds, whereas plaintiff could have walked the twenty-two feet from one side of the road to the other in about half that time. Plaintiff contends that even if she walked at the rate of two and one-half miles per hour, the taxicab's rate of speed must have been over sixty miles an hour. She had the right to cross the highway immediately, provided that she exercised this right with reasonable care. She had the right to expect that any other traveler would use reasonable care and prudence on the highway. She was not bound to anticipate that, under conditions then prevailing, a driver would without warning approach at such a high rate of speed that she could not reach the other side in safety. A pedestrian has the right to base his movements upon the assumption that the car is approaching at a reasonable speed, as long as he is unaware of its actual excessive speed. *Webb-Pepploe v. Cooper,* 159 Md. 426, 151 A. 235. Whether her action in attempting to cross the road twenty-two feet wide after she saw a car coming approximately 400 feet away, should be regarded as negligence on her part is a question as to which I think rational minds might differ.

In *Bouma v. Dubois,* 169 Mich. 422, 135 N. W. 322, where a woman, weighing 225 pounds, on her way to church at night, attempted to cross an avenue, and was

hit by a car running at great speed, and was dragged sixty feet, and it was shown, as in the case at bar, that the driver did not sound any warning, the court held that the question of contributory negligence was properly submitted to the jury.

In *American Dye Works v. Baker*, 210 Ky. 508, 276 S. W. 133, the court said that the only evidence of negligence on the part of the pedestrian was her crossing the street at the particular time, and that if she did not come suddenly in front of the truck and so close to it that the driver could not have stopped the truck, then there was no negligence on her part. It was further stated that the driver cannot run at an unreasonable speed and claim he is excused from liability on the ground that the person appeared so suddenly that he could not avoid the accident.

In *Filson v. Balkins*, Cal. App., 268 P. 445, it was held that a pedestrian, who saw an automobile approaching, and without again looking proceeded slowly across the street, with his back turned partly to the automobile, was negligent, but the court emphasized that, while the automobile was 400 feet away when he saw it coming, it was only 130 feet away when he started across. In that case it was stated that the pedestrian could not have walked across the road to safety before the arrival of the automobile; but in the instant case it seems that, if the taxicab had been driven at a moderate rate of speed, the pedestrian would have crossed the road in safety.

In *Laughlin v. Seattle Taxicab & Transfer Co.*, 84 Washington 342, 146 P. 847, where a man and his wife saw a cab coming about eighty feet away in a street thirty-five feet wide, and the driver did not see them, the question whether the pedestrians were guilty of contributory negligence was decided on the facts and not as a matter of law.

In our own court, in *Sheriff Motor Co. v. State, to Use of Parker*, 169 Md. 79, 179 A. 508, where a pedestrian while crossing a street was struck by a truck driven at an excessive speed, it was held proper to refuse a prayer

for a directed verdict for the defendant on the ground of contributory negligence, since there was no evidence that the pedestrian failed to look in both directions before stepping from the curb when he would have seen the truck seventy feet away, or that he thereafter failed to use reasonable care.

In the instant case the pedestrian thought she had ample time to reach the other side, and if the taxicab driver had been driving at thirty-five miles per hour, the "Victory speed limit" set by the Government during the recent war, she could have reached the other side in safety. I think, therefore, the question whether she was guilty of contributory negligence should be left to the jury.