BILLMEYER *v.* STATE, USE OF WHITEMAN, ET AL.

[No. 91, October Term, 1948.]

420

*Decided March 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*D. Lindley Sloan* and *William H. Geppert* for the appellant.

*Morgan C. Harris* and *William C. Walsh* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This case grew out of a traffic accident at McCoole, Allegany County, Maryland, on December 21, 1945, in which a pedestrian, Robert Whiteman, 32 years old, was struck by an automobile driven by Robert Billmeyer and died of a fractured skull. Suit was brought under Art. 67 of the Code and resulted in a verdict of the jury in favor of the three minor children of the decedent. The widow, having remarried, was awarded no damages. At the close of the testimony the defendant filed a motion for a directed verdict on the issues of negligence, contributory negligence and proximate cause, which was overruled. A motion for judgment *n.o.v.* was also overruled, and apportioned judgment entered for $11,480.

McCoole is a small, unincorporated town or village on the state highway along the Potomac River between Keyser, West Virginia to the east and Westernport, Maryland to the west. The main street, or portion of the highway passing through McCoole, is known as Queen Street and is a straight, level, concrete road, 16 feet wide, with dirt shoulders and no sidewalks. Shortly after midnight on December 21, 1945, Whiteman arrived at the scene

of the accident in a taxicab which stopped heading west with its left wheels on the edge of the concrete on the north side of Queen Street, opposite his brother's house, 75 Queen Street, on the south side, where he intended to spend the night. It was a clear, moonlight night, but cold and windy. The center of the road was dry and clear for three or four feet, but there was a light coating of hard packed snow and ice along the sides. There is a street or lane 14 feet wide, known as West Street, which intersects Queen Street at right angles on the north, but does not run through to the south. The entrance to 75 Queen Street is 45 feet from the southeast corner of the intersection, or what would be the corner if West Street were projected. There is a street light upon the telephone pole at what would be the southwest corner.

Whiteman got out of the right front seat of the taxicab. This would place him about eight feet from the front bumper. There was some delay while he paid his fare and searched for a quarter he had dropped in the seat. The point where the taxicab stopped was near the intersection of Queen Street and West Street, but not directly at the corner. The taxicab driver, Stoutameyer, testified, and the photographs show, there is a deep ditch and drain under the main highway at the northeast corner. He testified that he stopped "two or three feet" from the corner; he had "to travel about a car length to turn". He "pulled out and turned to the right and went up to 90 West Street to discharge" his other passengers in the rear seat. He last saw Whiteman standing by the front door as he pulled away. Whiteman had been drinking, but was not staggering. Stoutameyer did not see any car approaching, nor did the other passengers. When he came back down West Street a few minutes later and turned east into Queen Street, he was "flagged down" by Billmeyer. Whiteman's body was lying in the center of Queen Street illuminated by the headlights of a standing automobile headed west. His head was to the south of the center line, his feet were to the north in a diagonal direction. The point where he was lying was about a car

length further to the east from the point where Stouta-
meyer had last seen him. Billmeyer told him he "was
coming [east] down the highway and applied his brakes
and his car skidded to the left and caused the left side
of his car to hit Mr. Whiteman". There were no skid
marks. The handle of the left front door had been
knocked off and was lying in the center of the road near
the body. Billmeyer took Whiteman to the hospital, but
Whiteman died within a few hours after admittance. His
injuries consisted of scratches on his left hand, fracture
of the skull (frontal bone), lacerations and contusions
of the forehead, nose and eyelids.

Billmeyer, twenty-two years old, was a corporal in
the Army Medical Corps home on furlough. He was
driving his aunt's Dodge sedan, with her permission, and
had just taken her home and driven a friend to his home
in McCoole prior to the accident. The car had no chains
on its wheels. He testified that the condition of the road
did not require them. He had had two bottles and a
glass of 3.2 beer in the course of the evening, but was
not intoxicated. He testified that he was driving east on
the right hand side of the highway, on the concrete, at
about 25 miles per hour, when he saw a car, with head-
lights, on the north side of the road. He did not know
it was a taxicab; apparently it had no distinguishing
marks. He slowed down to about 20 miles per hour. As
he was passing this car he saw a man opposite his left
front fender walking across the road from behind the
other car. He was "blinded by this car that was setting
there; his lights were on. * * * I couldn't see him for
the cab." He put on his brakes and swerved to the right.
His car did not skid. He didn't have time to blow his
horn. The man kept on walking, two or three steps,
into the left side of the car alongside the driver's seat.
(In a statement given to the State's Attorney he said
one step.) The front of the car did not touch him, but
the impact, or "sideswipe," knocked him down. Billmeyer
continued on, turned at a filling station about 100 feet
to the east, and came back so that his headlights would

help him to render aid. Stoutameyer came along before he had attempted to move Whiteman, who was lying diagonally across the center of the road just opposite the entrance to 75 Queen Street. Stoutameyer helped him put Whiteman in his car to take him to the hospital. Another man picked up the broken door handle and handed it to Billmeyer.

In a pretrial deposition, offered in evidence over objection, Billmeyer testified that Whiteman was lying diagonally across the center of the road with his head to the north of the center line and his feet to the south. At the trial he did not cover this point in his testimony. The appellant contends that the trial court was in error in admitting the deposition. We find no error. Rule 11, section a(2), "Depositions," of the General Rules of Practice and Procedure, part 2, subd. 1, provides that "the deposition of a party * * * may be used by an adverse party for any purpose"; its use is not limited to purposes of impeachment.

Corporal Holsinger of the State Police examined Billmeyer's car and the scene of the accident that night and again on the following day. He found no skidmarks on the road, no evidence of damage to the car or fenders except the broken door handle. The headlights were in working order. He expressed the opinion that the condition of the road was such that "a car could proceed all right without chains", if care was exercised. It was not shown that either the police car or the taxicab had chains on. He stated that the speed limit at the scene of the accident was thirty miles per hour.

It is difficult to find any evidence of primary negligence on the part of Billmeyer. His rate of speed was not excessive, and the failure to have chains on his car would not seem to support an inference of negligence under the circumstances. It is a matter of common knowledge that chains do not prevent skidding upon icy surfaces, although they afford better traction in soft or deep snow. If we assume that Billmeyer's car did skid, and not merely swerve, in the sudden emergency, that fact alone would

not be evidence of negligence.  *Stafford v. Zake,* 179 Md. 460, 462, 20 A. 2d 144; *Wolfe v. State,* 173 Md. 103, 116, 194 A. 832.  Compare *Burhans v. Burhans,* 159 Md. 370, 150 A. 795.  It would only be significant in connection with antecedent conduct, such as excessive speed, or disregard of normal precautions against foreseeable dangers. *State v. Greaves,* 191 Md. 712, 718-719, 62 A. 2d 630, 633; *Fillings v. Diehlman,* 168 Md. 306, 309, 177 A. 400.

The appellees contend, however, that it could be inferred from the evidence that Billmeyer was on the wrong side of the road at the moment of impact, despite his testimony to the contrary, and that it could also be inferred that Whiteman was at a street crossing, within the meaning of section 181 of Art. 66½ of the Code, Supp. 1947, where pedestrians have the right of way over motor vehicles.  They rely primarily upon the case of *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517, where both these factors were present and the case was allowed to go to the jury.  In *Brown v. Bendix Radio Div., etc.,* 187 Md. 613, 51 A. 2d 292, the pedestrian was upon a street crossing and the automobile that struck her was passing a bus in violation of the statutory provision.  In that case we also held that a jury question was presented.  But in the case at bar we think no such inferences can be drawn from the evidence.  It seems clear that Whiteman's hand, or some portion of his body or clothing was caught by the door handle, at or behind the left center of the car, with sufficient force to break it off.  Since the door handle would be only about waist high, it could not have struck his head, but must have thrown him upon his face clear of the car, fracturing his skull on the concrete road.  The momentum of the automobile would necessarily throw him in a northeasterly direction.  There is no evidence that he was dragged or moved after he struck the road. Yet according to the undisputed testimony he was found lying across the center of the road, about 45 feet east of the street crossing.  The contradiction in the testimony as to the number of steps Whiteman took, or as to the relative position of his head and feet, does not seem to us to support an inference that he was north of the center

at the moment of impact. When he alighted from the taxicab he was at least ten feet east of the street crossing. After the accident his body was directly in front of his objective, the entrance to 75 Queen Street. We think the evidence cannot support an inference that he was ever on the cross walk or street crossing at the intersection.

But even if we assume that there was some evidence of a lack of vigilance or proper control on the part of the appellant, we think the evidence of contributory negligence is so clear as to bar a recovery. If Whiteman walked from behind the taxicab without observing the approaching car, and kept on walking, as testified by Billmeyer, oblivious of danger, he was guilty of negligence as a matter of law. As we said in *Brown v. Bendix Radio Div. etc., supra,* 51 A. 2d at page 295: "If there were no question of right-of-way involved, or the automobile had had the right-of-way, she would have been barred by her action in leaving a place of safety. *State v. Insley, supra* [181 Md. 347, 29 A. 2d 904]; *Webb-Pepploe v. Cooper,* 159 Md. 426, 151 A. 235; *Jendrzejewski v. Baker,* 182 Md. 41, 31 A. 2d 611; *Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81." See also *Barker v. Whitter,* 166 Md. 33, 170 A. 578, and *Thompson v. Sun Cab Co.,* 170 Md. 299, 184 A. 576. If we reject Billmeyer's version that the cab was standing or just starting to move, and assume that the cab had turned the corner before the accident, then Whiteman, walking across the road at a point east of the street crossing, would have had a clear and unobstructed view of the on-coming car and its headlights for a distance of a tenth of a mile. The cases cited definitely hold that it is negligence as a matter of law to cross a highway between intersections without looking for approaching traffic, and we must assume that if Whiteman had looked he could have seen the approaching car. We think the motion for judgment *n.o.v.* should have been granted.

> *Judgment reversed, without a new trial, with costs.*