## DEAN *v.* SCOTT
[No. 208, October Term, 1949.]

*Decided July 19, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON and HENDERSON, JJ.

*Aaron W. Shapiro,* with whom was *C. Ferdinand Sybert* on the brief, for appellant.

*Michael P. Crocker,* with whom were *Jesse Slingluff, Jr., Marbury, Miller and Evans* and *Charles Carroll, Jr.,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Charles W. Dean from a judgment entered for Frederick Scott, appellee, as the result of the granting of a motion N.O.V. setting aside a verdict of a jury in favor of the plaintiff, appellant here.

Of course, in deciding whether a motion for a judgment N.O.V. should be granted, the court should resolve all conflicts in the evidence in favor of the plaintiff and should assume the truth of all evidence and all inferences

as may be naturally and legitimately deduced therefrom which tend to support the claim of the plaintiff. *Armiger v. Baltimore Transit Co.*, 173 Md. 416, 425, 426, 196 A. 111; *Eisenhower v. Baltimore Transit* Co., 190 Md. 528, 59 A. 2d 313. We will consider the evidence in the light most favorable to the appellant.

On December 13, 1946, the appellant was employed as a repairman at Fort Meade. On that day, after working the shift from 5:00 P. M. until midnight, he slept at the barracks there until about noon the following day, a Saturday. He then went to a restaurant just outside Fort Meade where he ate, drank two bottles of beer, and remained until about 8:00 P. M. He then took a bus to Laurel, which was nearby. After arriving there he went to a restaurant where he stayed for about 30 minutes. He then took a walk on the Washington Boulevard in Laurel. This highway runs generally north and south toward Baltimore at the north and Washington at the south. He started to walk north toward Baltimore on the west side of the highway, facing traffic. The highway is 40 feet in width and is divided into four lanes, two for north bound traffic and two for traffic south bound. The outside lanes are referred to as the "fast lanes" and the inside ones as the "slow lanes". On the east and west sides of the highway are concrete sidewalks running north from the traffic signal, where Main Street crosses the highway in Laurel, to a culvert about 150 feet south of the Patuxent River bridge. Appellant testified as follows. He walked north about 100 yards in the town of Laurel and then decided to return in the direction from which he had come. There was traffic on the highway and he watched the traffic "which was pretty heavy" and when there was an opening in the traffic, two cars were approaching from the south about 50 yards away, he ran "pretty lively" across the highway to a point slightly north of a culvert south of the Patuxent River bridge. At that point there is dirt along the east edge of the macadam. When he came within a short step of the edge of the macadam and before stepping on

the dirt he stopped and turned left facing the west side of the highway and looked at traffic coming from the south. He stood there on the macadam, one short step from the dirt for "a minute" or "a little" and saw a car approaching in what he though was a "wobbling" manner from the south, traveling in the extreme right lane, or slow lane, north in the direction of Baltimore. As this car came near him, he attempted to step to his right—the one step into the dirt and off the macadam—and was struck on his left side by the end of the right front bumper of the car. Both the appellant's legs were broken and he was rendered unconscious. The appellee visited the appellant at the hospital and told him: "I am Scott, the man that hit you with the automobile. I didn't see you or know you was there until I saw something bounce off in front of my car."

Among other witnesses, Edward Gray testified that he was working at a garage located at the northwest corner of the Patuxent River bridge. His attention was directed by "some kids", who were crossing the bridge, yelling to a man staggering around in the middle of the road. Gray ran out to "get the man" but it was too late. Two cars were traveling north. He does not know wheather the first car hit him or not. "Dean was across the double white line almost in the center of the bridge, north of Laurel, and the next thing I saw, I saw his hands go back like this (indicating) when the first car passed him, and then I saw his head bend forward, and when his head bent forward, the only thing Mr. Scott's car hit was his head, and as soon as Scott hit him I don't know what they done. He just came to a stop. I don't think the wheels even slid. Both cars were traveling soft." Dean "rolled right on the ground" after Scott's car hit him. Gray was only 45 feet from the accident when it occurred. He heard a smash, glass break, and saw glass in front and beneath the bumper. The only part of Scott's car he saw damaged was the left headlight. The only debris after the accident was a broken whiskey bottle several feet away from where appellant

was lying in the road. He smelled alcohol in the road and on appellant's clothes. Appellant's feet were almost out to the center white line. He turned him over to see whether he was still breathing.

Officer Hudgins, of the Maryland State Police, stated he found appellant lying in the northbound fast traffic lane in approximately the center of the Patuxent River bridge with his feet facing in a northwesterly direction. He found glass from a whiskey bottle about 10 or 15 feet north of appellant. He based his opinion that appellant had been drinking on the smell of alcohol in the road. He said that the culvert, at or near which appellant said he crossed the highway, was 150 or 200 feet from the point where he found Mr. Dean. The bridge is about 80 feet long and 41 feet wide and, like the highway, is divided into four lanes, two for north bound and two for south bound traffic.

The trial judge found that the appellant was guilty of contributory negligence as a matter of law. With this finding we agree. From appellant's testimony and all rational inferences legitmately deducible therefrom in his favor, we can come to no other conclusion because his actions contributed directly to the accident.

Code, 1947 Supplement, Article 66½, Section 181, provides: "(Pedestrians' Right-of-Way at Crosswalks.) (a) All pedestrians shall have the right-of-way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers, or traffic control devices. Between street crossings in such towns and cities vehicles shall have the right-of-way.

Where appellant crossed the Washington Boulevard in this case there was no street crossing. Therefore appellee's vehicle had the right of way. Here appellant admits that he left a place of safety on the west side of the highway and started across the highway boulevard, 40 feet wide, where vehicles had the right-of-way, at a time when he saw two cars, on the east side of the highway which he must cross, traveling north toward

him, about 50 yards away. Instead of crossing the highway entirely, he stopped about one step before he was across, turned to his left, faced west, then looked south for traffic and was struck when he was one step from the edge of the highway, a place of safety. When asked the question: "Couldn't you tell from where you were on the highway that you weren't out of the way", he answered: "If I stepped right on off". Then, when asked: "Why didn't you step right on off", he answered: "I wanted to see how close that thing was to hitting me."

In the case of *Brown v. Bendix Radio Div., etc.,* 187 Md. 613, 51 A. 2d 292, the pedestrian was on a street crossing and the automobile that struck her was passing a bus in violation of the statute. We said in that case, 51 A. 2d at page 295: "If there were no question of right-of-way involved, or the automobile had had the right-of-way, she would have been barred by her action in leaving a place of safety. *State for Use of Parks v. Insley,* 181 Md. 347, 29 A. 2d 904; *Webb Pepploe v. Cooper,* 159 Md. 426, 151 A. 235; *Jendrzejewski v. Baker,* 182 Md. 41, 31 A. 2d 611; *Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81." See also *Barker v. Whitter,* 166 Md. 33, 170 A. 578; *Thompson v. Sun Cab Co.,* 170 Md. 299, 184 A. 576; and *Billmeyer v. State,* 192 Md. 419, 426, 64 A. 2d 755, 758.

In the case of *Webb-Pepploe v. Cooper, supra,* the plaintiff alighted from a north bound automobile at night and was standing in the gutter between crossings on the east side of Charles Street, Baltimore, 34 feet in width. He said he went across the brightly lighted street on a moonlit night, looking both north and south, and saw no automobile headlights. As he reached the gutter on the opposite or west side of the street, he was struck by a south bound automobile with proper lights, which had been about 158 feet away from plaintiff when he started to cross the street. This Court held that the plaintiff was guilty of contributory negligence as a matter of law. In *Jackson v. Forwood, supra,* the plaintiff alighted at night from a bus at the side of a boulevard

highway 22 feet in width. She saw an automobile with its lights lit approaching at a distance of about 400 feet and traveling in that part of the road which she must cross. This Court held her guilty of contributory negligence as a matter of law when she walked across the boulevard, leaving a place of safety in front of the bus, and was struck by the automobile. In the case of *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517, relied on by the appellant, where it was held that contributory negligence was a question for the jury, the plaintiff was in a plainly marked crosswalk when injured and not on a boulevard highway, as in the instant case. The mere fact alone that the appellant here crossed a street between intersections was not necessarily negligence. It was negligence because it was coupled with the circumstances which he so crossed that street. *Ebert Ice Cream Co. v. Eaton,* 171 Md. 30, 35, 187 A. 865. *Webb-Pepploe v. Cooper, supra.* Article Maryland Law Review, 1950, Vol. XI, No. 1, Page 1.

Here, appellant, not only left a place of safety at night to cross a highway 40 feet wide where vehicles, having the right of way, were approaching 50 yards distant, but also deliberately stopped in a place of danger, a place where appellee's vehicle had the right to travel. There was no evidence here to sustain the last clear chance doctrine and it was not argued in this case. The judgment will be affirmed.

*Judgment affirmed, with costs.*