LOVE *v.* STATE, Use of NELSON et al.

[No. 242, September Term, 1957.]

Decided June 16, 1958.

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Frederick J. Green, Jr.,* with whom was *James J. Lindsay* on the brief, for the appellant.

*M. Peter Moser* and *David M. Blum,* with whom were *Nyburg, Goldman & Walter* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This case, like *Sun Cab Co., Inc. v. Cialkowski,* 217 Md. 253, 142 A. 2d 587, decided contemporaneously herewith, involves a pedestrian-motorist accident. Unlike the *Cialkowski* case, there is a major issue of fact as to whether the point of impact was within the crosswalk of a street intersection or was between intersections. This is a Lord Campbell's Act case which resulted in a verdict in favor of the equitable plaintiffs (referred to below simply as the "plaintiffs"). The defendant filed a motion for a judgment *n.o.v.,* or in the alternative for a new trial, which motion was overruled. Judgment was made absolute in favor of the plaintiffs and the defendant appeals. He waives all alleged errors in the instructions of the trial court and seeks a reversal without a new trial, first,

on the ground that the plaintiffs' decedent was guilty of contributory negligence as a matter of law, second, on the ground that there was no legally sufficient evidence of negligence on the part of the defendant, and third, that the defendant's actions were not the proximate cause of the accident.

The accident in which the plaintiffs' decedent, James Nelson, was killed, occurred at about 12:15 A. M. on December 27, 1955. The preceding day, Monday, December 26th, had been a holiday. Nelson had been drinking early in the afternoon. There is no testimony that he had been drinking during the evening, but medical testimony, based upon a blood test made after his death showing an alcoholic content of 0.20%, was that Nelson was intoxicated. On the other hand, the testimony of his wife who last saw him at 7 P. M., of his aunt whom he visited for about an hour after arriving at her home between 7 and 8 P.M., and of a friend with whom he spent about two hours playing cards between 10 P.M. and midnight, was that Nelson was sober when they last saw him. The friend testified that Nelson had nothing to drink during the two hours that he was at his house at 1343 N. Gilmor Street in Baltimore.

Nelson was struck and killed at or near the intersection of Fulton Avenue and Laurens Street, which is about a block and a half from the above address, by an automobile owned and driven by the defendant, Love. Love is the only known living eye witness to the accident. Testimony was also given by Officer Puller, of the Baltimore Police Department, who investigated the accident shortly after it occurred, and by Dr. Guerin, Assistant Medical Examiner, who made a post mortem examination of Nelson's body.

Love was driving south on Fulton Avenue, which is a dual highway. Each of the traffic lanes is 24 feet wide, and they are separated by a grass plot 25 feet wide. The pedestrian crosswalk on the south side of Laurens Street is 15 feet wide and at the time of this accident was marked by broken white lines. Fulton Avenue was a boulevard and the speed limit was 30 miles per hour. Love testified that he did not see Nelson until the latter suddenly appeared about three feet in front of his car, and Love did not apparently know whether

Nelson was crossing from east to west or vice versa. Medical testimony showed that several of Nelson's ribs on his right side were broken, and it is highly probable from this fact that he was endeavoring to cross from east to west when he was hit. Love was unable to stop his car or to swerve so as to avoid hitting Nelson. The blow must have been quite severe, for Nelson's neck was broken. Nelson was hit by just about the center of the front end of Love's car. Bones in his legs, as well as his ribs and neck were broken. He was dragged, as shown by rub marks, about a hundred feet and his body was found 130 feet south of the southern curb line of Laurens Street, or 115 feet south of the southern line of the Laurens. Street crosswalk. A hood ornament from Love's car was found 44 feet south of that line and pieces of a car emblem were found about 5 or 10 feet from Nelson's body.

The defendant apparently did not stop after the accident. He drove on to a dance where he expected to, and did, meet his wife. He was much upset and did not stay at the dance. He explains leaving the scene of the accident as being due to the fact that he was scared, which is doubtless true. Some hours later he got in touch with a lawyer who advised him to turn himself in to the police the first thing in the morning. The police found and arrested him before he had acted on this sound advice.

When Officer Puller arrived at the scene of the accident he made a careful plat of the area, which showed, in addition to the physical facts already referred to, the location of four large street lamps, one each at the corners of the Fulton Avenue grass plots on the north and south sides of Laurens Street. These grass plots extend to the prolongation of the Laurens Street curb lines, and the Laurens Street pedestrian crossings traverse the ends of these parked plots. The lights are of high power.

The principal question of fact at issue in this case is the point of impact. Love testifies that it was south of the crosswalk. His testimony is consistent on that point, though his statements made at different times vary a good deal as to how far south of the crosswalk Nelson was when struck. Officer Puller could not identify the point of impact. From the rub

mark, it must have been not more than 15 feet south of the crosswalk, and this mark began 9 feet from the west side of the grass plot.

There was some evidence from which it could have been found that Love was driving at 35 or 40 miles an hour in a 30-mile speed zone. With the existing lighting Nelson would have been almost surely visible to an attentive southbound motorist for some distance. We shall assume that if the point of impact was in the crosswalk, there would be little difficulty in upholding a finding that Love was negligent, and that whether Nelson was guilty of contributory negligence or not would be a proper question for determination by the jury. If, however, the point of impact was not in the crosswalk, then even though we still assume negligence on the part of Love, there is a quite different question as to contributory negligence on the part of Nelson. Since there was no traffic control signal at this intersection, Section 193 (a) of Article 66-½ of the 1957 Code (involved in the *Cialkowski* case, *supra*) would not apply, and Section 236 (a) of that Article governs the situation. Its first sentence, which corresponds to Section 193 (a), gives the pedestrian the right of way at street crossings not controlled by traffic signals, but if the accident did not happen at a crosswalk, Nelson and those claiming through him are confronted by the provisions of the second sentence of that Section which states that: "Between street crossings in * * * towns and cities, vehicles shall have the right of way."

Careful study of the evidence leads us to the conclusion that it is insufficient to show that the point of impact was in the crosswalk. On the contrary, the defendant, who carries the burden of proof to show contributory negligence on the part of the plaintiff, has adduced evidence to show that the accident occurred south of the intersection, and this evidence is supported, rather than contradicted, by the physical facts testified to by the investigating police officer, and there is no other direct evidence on the subject. The highly culpable conduct of the defendant in driving on without apparently stopping or even slowing down after he knew that he had struck a man does not alter the place of the collision.

The plaintiffs are faced with a difficult problem of proof, and their case has been ably presented despite this handicap. The defendant could testify (*Shaneybrook v. Blizzard,* 209 Md. 304, 121 A. 2d 218), but the victim of the accident is dead and there was no other eye witness. This case differs from *Thompson v. Sun Cab Co.,* 170 Md. 299, 184 A. 576, where the injured plaintiff survived, but his own testimony on the one hand left gaps in proof essential to the establishment of his case as to the point in an intersection where a cab struck him, and on the other hand he showed facts sufficient to establish his own contributory negligence but failed to explain them.

However, as was said in that case (170 Md. at 306), "For testimony to have probative weight it is not enough that from it the idea or thought may arise that a fact in issue may be possible." We think that this rule is applicable to the plaintiffs' theory that Nelson may have been struck while in the crosswalk and carried fifteen or more feet on the bumper and hood of the defendant's car, without his feet or shoes touching the ground, until the point was reached at which the rub mark from his shoe began. We think it also applicable to their theory that death may have been due to dragging after the initial impact, rather than to that impact itself. The Assistant Medical Examiner testified that the cause of death was a transection of the cervical cord and that the maceration or crushing of the deceased's spinal cord was not necessarily caused by the initial impact, but could have occurred from his being dragged. The fatal injury was described by the doctor as being of a whiplash type which would be produced by "some sort of motion where the head would be carried forcefully in one direction and his neck in the other, or at least held rigid and straight—the vertebral column either had to remain stationary or had to be pushed in the other direction to produce this condition." Though he said that this could have been caused by dragging, we find no statement of his opinion that it was so caused, nor do we find any evidence tending to show that it was caused in that way. On the contrary, it is evidently the kind of injury which would be likely to be caused by a violent impact.

We are led to the conclusion that there is no sufficient evidence to support a finding that the decedent was in a crosswalk at an intersection when he was struck and that there was no sufficient evidence to show that his death was due to negligence of the defendant which became operative after the initial impact. We must, therefore, consider the case as one in which a pedestrian was struck by a motor vehicle on a city street at a point between crosswalks.

It is true that crossing a street between crosswalks has repeatedly been held or said not to constitute negligence *per se* (*Nelson v. Seiler,* 154 Md. 63, 76, 139 A. 564; *Slaysman v. Gerst,* 159 Md. 292, 150 A. 728; *Legum v. State, Use of Moran,* 167 Md. 339, 173 A. 565), but as was pointed out in *Henderson v. Brown,* 214 Md. 463, 468, 135 A. 2d 881, a pedestrian crossing between intersections "must use the greatest care for his own protection. While both the pedestrian and the driver have an equal right to use the street, the amount of diligence and care needed on the part of each is shifted from one to the other according to where the accident happens. When a pedestrian crosses between intersections, the law requires him to know that he must accommodate himself to vehicles on the road, that he cannot dispute their right-of-way but must cross only as the traffic affords safe opportunity."

Cases in this State are numerous and uniform in holding that a pedestrian crossing a street between intersections is guilty of contributory negligence if he fails to look for approaching motor vehicles, or, if having looked, he fails to see such a vehicle, and so fails to guard against being struck by it. *Webb-Pepploe v. Cooper,* 159 Md. 426, 151 A. 235; *Thompson v. Sun Cab Co., supra; Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81; *Billmeyer v. State, Use of Whiteman,* 192 Md. 419, 64 A. 2d 755; *Dean v. Scott,* 196 Md. 70, 75 A. 2d 83; *Males v. Davidson,* 200 Md. 296, 89 A. 2d 597; and *Henderson v. Brown,* 214 Md. 463, 135 A. 2d 881, above cited. For an extensive review of cases dealing with the rights of motorists and pedestrians under the Maryland right of way law down to 1950, see *Due and Bishop, Motorists and Pedestrians,* 11 Md. L. Rev. 1.

The evidence shows that the night of the accident was clear and that the defendant's lights were on. If the deceased had looked he must have seen them approaching, and he should have protected himself by not undertaking to cross until he could do so with safety. If he did not look but stepped out blindly he was equally clearly guilty of contributory negligence.

In this view of the case, other questions need not be considered.

*Judgment reversed, with costs, without a new trial.*