VAN *v.* McPARTLAND

[No. 210, September Term, 1965.]

*Decided May 27, 1966.*

The cause was argued before PRESCOTT, C. J., and MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*William H. Geppert* and *Hugh A. McMullen,* with whom were *Gunter & Geppert* on the brief, for appellant.

*Milton Gerson,* with whom was *Simon F. Reilly* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Here is an unusual variation on a familiar theme. Detective Captain James E. Van (appellant), while driving his own automobile north on Frederick Street [1] in Cumberland, struck Loretta G. McPartland, widow (appellee), aged 68, as she was crossing [2] Frederick Street. From the $5,000 judgment, entered on the verdict of an Allegany County jury in her favor, Capt. Van has taken this appeal.

Van contends primarily and principally that appellee was guilty of contributory negligence as a matter of law. He lists

---

1. A one-way street on the right side of which parking is allowed leaving only one lane for traffic.

2. From the side (east) on which cars were parked to the west side.

other contentions but it will not be necessary for us to consider them.

It was clear and cold on 30 January 1964. After a busy day at headquarters Capt. Van decided to leave a little early. No doubt this was one of the perquisites accorded him by reason of his 37 years' service. Homeward bound he approached the intersection of Frederick and Centre Streets a little before five o'clock. The traffic light controls at the northeast corner were manned by Officer Stanken. Although the light was green Officer Stanken was expediting the flow of traffic through the intersection with arm signals. Van, "three or four car lengths" behind the car in front of him, entered the intersection and went on through it. Frederick Street immediately beyond the intersection bears left about 45 degrees.

Meanwhile, appellee, on her way to Twigg's store (somewhere west of Frederick Street) was walking along the north side of Centre Street intending to cross Frederick Street. She stopped at the intersection and "looked." She said she saw Van's "car standing over there" waiting for the light to change. She testified she "started across the street" and had her "left foot on [the opposite curb] and * * * [her right] foot in the air when * * * [she] was hit."

Van, as he came through the intersection, "saw no one except people standing on the curb, [and] the traffic officer * * *." He "didn't see Mrs. McPartland until she was about a foot from * * * [his] car * * *." He applied his brakes "just a fraction too late to avoid the impact." "* * * [A]t the impact [he said], * * * the upper portion of her body sort of came back on the hood toward the windshield and then * * * when the car stopped [within a foot or two, he testified] she * * * slipped to the ground." At the time he estimated the distance from the front of his car to the building line on Centre Street to be 26 to 27 feet. Immediately he jumped out of his car and found her "sitting in a slumped position * * * right in front of the car." Officer Stanken and several bystanders helped him "put her in the rear seat." He left immediately for the hospital.

Officer Stanken testified "there was a good bit of traffic that day" and he had been "trying to get the traffic out of Frederick Street." He recalled that after Van's car passed him he

"heard the squeal of tires." He turned "around and * * * saw the car striking the lady." He said "she rolled up onto the hood * * * and fell back down onto the road * * * in front of the car." She was lying "approximately in the middle of the street * * * about 33 feet from where [he] was standing." He testified also that (according to his measurements) she was 24 feet from the crosswalk and 10 feet from the west curb of Frederick Street.

Perry W. Fields, a retired bus driver, helped Officer Stanken and Van put the appellee into the rear seat. He said she was 2 feet in front of the car and about 10 feet from the west curb of Frederick Street. The distance from the crosswalk to where she was sitting in the street, in his judgment, "was around about 20 or 22 feet."

It was suggested at argument that the jury could have found from the evidence that appellee was actually in the crosswalk when she was struck. There were no "lines or other marking[s]" (Code, Art. 66½, § 2 (a) (9) (1957)) indicating a pedestrian crossing. Counsel argued, however, that since she crossed where "everyone crossed" a finding that she was in the crosswalk was justified. We rejected a similar argument in *State v. Miller*, 199 Md. 521, 526, 87 A. 2d 401 (1952). Custom or habit, we said, "does not entitle * * * [pedestrians] * * * to establish a crosswalk which then gives them the right of way." Counsel also attach some importance to the fact that Centre Street changes direction slightly at this intersection and that if the lines of the sidewalk are "prolonged" they would enclose an area which would support a finding that appellee was in the crosswalk. But counsel have misread the statute. The statute defines the crosswalk as "that portion of a roadway ordinarily included within the prolongation *or connection* of the lateral lines of sidewalks at intersections." Code, Art. 66½, § 2 (a) (9) (1957). (Emphasis supplied.) Prolongation of the lateral lines of the sidewalk obviously applies in cases where there is no change in the direction of the street at the intersection. Where there is a change of direction or where some other asymmetrical condition prevails the lines of the sidewalk at one curb should be connected with the lines of the sidewalk at the opposite curb to delineate the crosswalk.

Appellee does not, in so many words, say that she was in the crosswalk (as we have defined it), nor indeed do any of the witnesses who testified on her behalf. She was shown a photograph upon which she made a mark to indicate the spot where she contends she was struck. Her mark, alongside a utility pole, is about 5 feet west of and clearly outside of the crosswalk. Moreover it seems to us quite likely she has confused the pole standing where she made the mark with a similar pole about 20 feet further up the street and approximately where she was picked up by Van, Fields and Officer Stanken.

Since appellee was crossing between crosswalks she was bound to accommodate herself to whatever vehicles were using the street. In *Love v. State, Use of Nelson,* 217 Md. 290, 297, 142 A. 2d 590 (1958), Chief Judge Brune, for the Court, restated the familiar principles of law which are controlling here:

> "It is true that crossing a street between crosswalks has repeatedly been held or said not to constitute negligence *per se* (*Nelson v. Seiler,* 154 Md. 63, 76, 139 A. 564; *Slaysman v. Gerst,* 159 Md. 292, 150 A. 728; *Legum v. State, Use of Moran,* 167 Md. 339, 173 A. 565), but as was pointed out in *Henderson v. Brown,* 214 Md. 463, 468, 135 A. 2d 881, a pedestrian crossing between intersections 'must use the greatest care for his own protection. While both the pedestrian and the driver have an equal right to use the street, the amount of diligence and care needed on the part of each is shifted from one to the other according to where the accident happens. When a pedestrian crosses between intersections, the law requires him to know that he must accommodate himself to vehicles on the road, that he cannot dispute their right-of-way but must cross only as the traffic affords safe opportunity.'
>
> "Cases in this State are numerous and uniform in holding that a pedestrian crossing a street between intersections is guilty of contributory negligence if he fails to look for approaching motor vehicles, or, if having looked, he fails to see such a vehicle, and so fails to guard against being struck by it. *Webb-Pep-*

*ploe v. Cooper,* 159 Md. 426, 151 A. 235; *Thompson v. Sun Cab Co., supra; Jackson v. Forwood,* 186 Md. 379, 47 A. 2d 81; *Billmeyer v. State, Use of Whiteman,* 192 Md. 419, 64 A. 2d 755; *Dean v. Scott,* 196 Md. 70, 75 A. 2d 83; *Males v. Davidson,* 200 Md. 296, 89 A. 2d 597; and *Henderson v. Brown,* 214 Md. 463, 135 A. 2d 881, above cited. For an extensive review of cases dealing with the rights of motorists and pedestrians under the Maryland right of way law down to 1950, see *Due and Bishop, Motorists and Pedestrians,* 11 Md. L. Rev. 1."

There remains for consideration appellee's assertion that she "looked" and that when she looked Van's car was stopped on the other side of Centre Street. In disposing of this aspect of the case we think it might be helpful to set forth precisely what was said by appellee:

"* * * and I stood there for a while and I looked over and I saw this [Van's] car;"

\* \* \*

"Q. Was the car moving or was it stopped? A. It was stopped."

\* \* \*

"Q. And did you look? A. I looked.
Q. And what did you see? A. I saw the car standing over there."

\* \* \*

"Q. Before you stepped off the curb did you look to your left to see if any traffic was coming? A. Yes, I did.
Q. Was there any traffic coming? A. I didn't see any cars.
Q. If there was traffic coming you didn't see them; is that right? A. No.
Q. And did you observe a police officer standing in the street directing traffic? A. No.
Q. You did not. A. No."

550

\* \* \*

"Q. Did you look again to the left to look for cars?
A. I looked and still the car was stopped there and I crossed.
Q. I want to get the details of this so the Court and jury will understand. You stepped off of the curb and you looked again to your left to see the car; is that right? A. Yes, sir.
Q. And was the car still stopped? A. Yes, sir.
Q. Then you started on across. A. Right.
Q. Did you look again? A. No.
Q. You did not look again at any time? A. No.
Q. So you looked when you were on the sidewalk, you looked once to the left, saw the car standing there, you stepped off of the curb and looked again and saw the car standing there; is that right? A. That is right.
Q. Then you walked on across the entire intersection without again looking to your left; is that correct? A. That is right."

Appellee contends that what we said in *Henderson v. Brown,* 214. Md. 463, 468-69, 135 A. 2d 881 (1957) (quoted below) absolves her of contributory negligence as a matter of law:

"Maryland cases have adopted the language of Judge Cardozo in *Knapp v. Barrett,* 216 N. Y. 226, 230, as to one who crosses the street: 'The law does not say how often he must look, or precisely how far, or when or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again.' In Maryland the language, generally if not always, has been applied where the pedestrian was crossing at a crosswalk, it being said that having looked and seen no vehicle, or having seen a vehicle at a distance justifiably thought to be safe, the wayfarer was entitled to assume that an oncoming vehicle would respect his right-of-way. See, for example, *Merrifield v. Hoffberger,* 147 Md. 134; *Taxicab Co. v. Ottenritter,* 151 Md. 525; *Shaivitz v. Etmanski,* 164 Md. 125; *Legum v. Moran,* 167 Md.

339; *Sheriff Motor Co. v. Parker*, 169 Md. 79. *The same rule might well apply, under some circumstances, when the pedestrian was crossing where he did not have the right-of-way. If, as he started to cross, he looked, and the view gave him credible assurance of adequate opportunity and ability to cross safely, he might not, as a matter of law, be said to be negligent in failing to look again, although common prudence would seem to say that it would be better to do so."* (Emphasis supplied.)

It will be observed that Judge Hammond chose his words with care. He said the rule *"might * * * apply* under *some* circumstances." (Emphasis supplied.) He said further that if "the view gave * * * [appellee] *credible assurance* of *adequate* opportunity and ability to cross safely" she *might not* be contributorily negligent as a matter of law, in failing to look again. We do not see how this language can be applicable here.

Van said at least one car preceded him through the intersection. Seifert corroborated this. Mrs. LaMarca said "traffic was stopped on Centre Street." Mrs. Dixon (testifying for appellee, as did Seifert and Mrs. LaMarca) said traffic was stopped on Centre Street and that "at that time of the evening there is quite a lot of traffic there." Perry Fields testified that traffic on Centre Street had stopped and that "traffic was moving through Frederick Street." Officer Stanken said the light was green for traffic on Frederick Street and that "there was a good bit of traffic that day." In the circumstances the appellee's view could not have given her "credible assurance" that she had "adequate opportunity and ability to cross safely" and her statement that when she looked she saw nothing (on either Frederick or Centre Streets), except Van's motionless car, must be disregarded as impossible. It will be recalled that she did not say no traffic was there but that she did not see it. Had she looked she was bound to have seen the northbound traffic on Frederick Street. Even if it were possible to accept her statement at its face value it seems to us she could have crossed safely the remainder of the one lane of Frederick Street before Van could have proceeded from a dead stop on the other side of Centre Street to the point where she was picked up by Officer Stanken.

552

Having examined the evidence in the light most favorable to the appellee and having given her the benefit of all *plausible* inferences, *Dorsey v. General Elevator,* 241 Md. 99, 101, 215 A. 2d 757 (1966), we must conclude she was contributorily negligent as a matter of law.

*Judgment reversed. Costs to be paid by appellee.*