# THEODORE DUROSS

*vs.*

# THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Accident to Pedes rian—Contributory Negligence—Stepping on Board—Instructions.*

One injured by the tilting of a board, which rested at one end on the curb, and on which he stepped when about to cross the street, without noticing, what was apparent to anyone who looked, that a piece had been cut out at the end of the board, so that it would tilt when stepped on, was guilty of contributory negligence, the street being, by reason of the recent paving thereof, in such a condition as to warn anyone of the necessity of care in using it, and similar boards, apparently used in the paving work, lying around at the time.                              p. 61

Error in directing a verdict for defendant for lack of evidence of negligence on defendant's part is not ground for reversal if defendant was entitled to have the case withdrawn from the jury on the ground of contributory negligence.                              p. 63

*Decided February 4th, 1920.*

Appeal from the Court of Common Pleas of Baltimore City (STANTON, J.).

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Benjamin Rosenheim,* for the appellant.

*Roland R. Marchant, City Solicitor,* and *Edward F. Johnson, Assistant City Solicitor,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is an appeal from the judgment of the Court of Common Pleas of Baltimore City in a suit for damages growing out of an accident to the appellant while walking on a board, laid by someone on the curb at the corner of Ramsay and Furrow Streets and extending from the curb on to the bed of Furrow Street. The accident occurred on August 16th, 1917, about nine o'clock in the morning.

The only exception was to the granting of appellee's prayer withdrawing the case from the jury.

The declaration is as follows:

"Theodore A. Duross, plaintiff, by Simon E. Sobeloff, his attorney, sues the Mayor and City Council of Baltimore, a municipal corporation, and John J. Dunbar and Louis Lawson, co-partners, trading as the Lawson Construction Company:

"For that, on or about August 16th, 1917, the plaintiff, while in the act of carefully and prudently walking down from the sidewalk into the street at the northeast corner of Ramsay and Furrow Streets, two public highways in the City of Baltimore, stepped upon a board placed there by the defendants, their agents and servants, for the purpose of enabling pedestrians to walk thereon from the sidewalk to the street; that a corner of said board was sawed away and the board was negligently and insecurely placed and for a long time permitted to remain in such a manner that it tilted and turned under the weight of the plaintiff, and threw him to the ground, inflicting serious, dangerous and permanent injuries to his head, body and limbs; that the plaintiff's left ankle was sprained, and he was prevented and disabled for a long time and is still prevented and disabled from attending to his usual duties as a traveling salesman; that he suffered excruciating pain and mental anguish, and was forced to undergo great expense for medical attention, medicines, bandages, crutches, etc., and other great and permanent wrongs sustained.

"And the plaintiff further says that in stepping upon said board he had no knowledge of its dangerous condition, and that the accident was caused solely through the negligence, default and want of care on the part of the defendant, their officers, agents and employees in the premises in placing and permitting the said board to remain for a long time in the place aforesaid and in the manner aforesaid, and without any contributory negligence on the part of the plaintiff.

"Wherefore, the plaintiff claims ten thousand dollars' ($10,000) damages.

"Simon E. Sobeloff,

"Attorney for Plaintiff."

The general issue plea was filed by appellee and issue joined thereon.

The testimony in substance was as follows:

Appellant was walking along Ramsay Street and when he came to Furrow Street he saw the board and supposing it had been put there by the city for the convenience of people using the sidewalk to enable them to cross Furrow Street without walking in water and mud, which had accumulated there, stepped on the board with his right foot, when it remained steady, but when he put his left foot forward the board tilted with the weight of his body, threw him off, and his ankle was sprained; that the board was about eight or nine feet long, twelve inches wide and an inch and a quarter thick, and a piece about six inches square had been cut out of the left side of the end of the board; that the part which rested on the curb was the six inches that remained on the end of the board at the right; that the cause of the tilting was the absence of support on the curb of the left side of the board by reason of the cut out corner. Appellant, testifying in his own behalf, said there were other boards of like general character lying around the street, but he did not notice whether they had pieces cut out, "but they were similar

boards, boards that I would judge from the appearance they had been used for the same work that the board that tilted with me into the street had been used for." "I observed the same as I saw on the board that tilted with me, that had been used in the construction of cement." The witness had previously testified that on the board which tilted "there was a stain of the asphalt, the same as they mix it up and go to pour it, there is a certain amount of water in it." It does not appear from the testimony that any of the other boards were in a position to be used to walk on in crossing the street.

On cross-examination appellant testified as follows: "Q. It would have been perfectly obvious to you, would it not, that the portion of that board which rested on the curb was narrower than the portion which was beyond the curb if you had looked, would it not? A. As I say, if I go to cross anything—— Q. Please answer yes or no first. Wouldn't that have been perfectly obvious to you? A. No, it would not. Q. Tell us why? A. For the reason that I approach anything of that character, crossing a bridge or anything of that kind, I always think that the city has it in a perfectly secure condition so that we can walk on it, and my seeing that board there and seeing the water there, naturally I supposed it was placed there for us people to walk on. Q. You assumed that this board was perfectly sound and securely placed without taking any pains to see whether it was or not? A. I naturally thought it was secure, because I have every right to believe that. Q. Altogether apart from what your idea of the law may be, my question is whether or not you looked at this board or gave any thought to its security or safety before you placed yourself upon it? A. I did not. I assumed that the board was there for me to walk on. Q. If you had looked you would have seen, wouldn't you? A. Possible, certainly. Q. There was nothing to prevent you from having seen that was there? A. Nothing, no, sir."

The witness further testified that the accident happened in broad daylight on a nice, clear day.

On re-examination, in answer to leading questions appellant testified that it was possible to observe that the board in question was sawed out, but that it was impossible to observe the distance between the curb line and the portion of the board sawed out; or that it was free of the curb or that it was loose and would tilt under his weight. But he gave no reason or explanation why it was impossible.

Victor Brown, a letter carrier, testifying for the appellant, said he had occasion on the day of the accident to go to this corner and that he was tripped by this board. He said, as far as he could remember, he judged it to be a board that had been used in putting in concrete curbing; that it was stained with cement, and had rough particles of cement on it, like what would gather after it had lain some time; that it had been there for some time, for days, before the accident. On cross-examination this witness said he was unable to identify this particular board as the one which he had observed lying there prior to the accident, but it was apparently the same.

Leroy R. Mays, a witness for appellee, testified that in August, 1917, he was an inspector for the Paving Commission of Baltimore, which had the contract for paving Ramsay Street from Bentalou Street to Fulton Avenue; that the intersection of Furrow and Ramsay Streets was completed about June 20th; that on August 8th, it was possible for traffic to pass along Ramsay Street, and that it lacked only about three inches of binder and a topping; that an armored concrete curb was put in at the northeast corner of Furrow and Ramsay Streets. The sidewalk adjacent to the curbing had been repaved and was open to traffic on August 8th, 1917, and the whole of Ramsay Street between Payson and Bentalou Streets was open for traffic, although the binder and topping had not yet been put on. On that date work was stopped in this section and resumed on August 17th; that on August

8th, the forms used for putting in the concrete curb had been removed and were moved further on on the work, or were taken to some other streets in the contract; that they did not require any more boards there; that prior to August 8th they did not place any boards at that corner and witness never saw anyone place any boards there, and never instructed anyone to place any boards there; that his record book indicated that the curb at the northeast corner of Furrow and Ramsay Streets had been completed and the boards removed on June 20th, 1917.

At the conclusion of the testimony appellee offered the following prayer, which was granted:

"The defendant prays the Court to instruct the jury that no evidence has been offered in this case legally sufficient under the pleadings to entitle the plaintiff to recover and the verdict of the jury must therefore be for the defendant."

In the view we take of this case it is not necessary to decide whether there was any evidence tending to show negligence on the part of the appellee. The appellant is clearly barred from recovery by his own negligence. According to his own testimony he thought he had a right to rely upon the condition of the street being absolutely safe, and that he was not obliged to do any looking for himself, even when he was about to walk on a board which he must have known was placed there for some temporary purpose; whether by, or under the authority of the city, he did not know. He saw other boards lying around, so he says, and he had no right to assume that some pedestrian had not for his own convenience to avoid walking in the water rested the end of one of these boards on the curb. The condition of the street at that time was such as to warn any one using it of the necessity of using care. Any one who looked could not have failed to see that only six inches of the twelve inches board rested on the curb and that necessarily it would tilt with the weight of a heavy man stepping on the side of the board which did not rest on the curb.

This is too plain a case of contributory negligence to need the citation of any authority. In *Knight* v. *Baltimore City,* 97 Md. 647, this Court sustained the lower Court in withdrawing a case from the jury on the ground of contributory negligence where the driver of a wagon failed to see a hole in the street which was plainly visible and which he could have seen if he had looked. In that case it is true, JUDGE PEARCE, speaking for the Court, said: "Greater watchfulness is required of the driver of a team upon a city street, than of a pedestrian upon the sidewolk, and what would be negligence in law in the former case might not be in the latter." This was said in reference to a citation from an Iowa case in which the plaintiff was walking on a city sidewalk and, while looking at a display of goods in a shop window, stepped into an areaway which was under and projected beyond the window. The Iowa Court held that in fixing his gaze upon the display of goods in the show window, "the plaintiff was answering the manifest design of their being placed there, and that as placed, they were a standing invitation to passers by to view them" and that when persons are passing along the sidewalks of a city, allowance must be made for their attention being attracted to those things displayed for the very purpose of so attracting it, and that though they may be negligent as a matter of fact in permitting their attention to be thus attracted, the law will not arbitrarily determine them to be so. Our Court was careful not to commit itself to this ruling in its entirety; but even if it should be accepted to the fullest extent it would have no bearing upon the facts of the case at bar. There is not a particle of testimony tending to show that the attention of appellant was drawn away from what was in front of him. Indeed it was necessary for him to look ahead of him in order to walk on this narrow plank. It has nowhere been said that a pedestrian is not bound to use his eyes in crossing a public street, especially one in process of being paved, with every mark of incompleteness apparent. Indeed it is admitted that appellant saw the board before he stepped on it; and a loose board

at a city crossing was notice to him of the necessity of using care before attempting to walk on it. Of course there was plenty of room to get by without stepping on it at all.

If there was any evidence to go to the jury on the question of the negligence of the appellee, the defendant's prayer should have been refused. But even if the granting of the prayer as offered was erroneous, it was not a reversible error, because defendant was entitled to have the case withdrawn from the jury on the ground of contributory negligence.

*Judgment affirmed, with costs to appellee*