# DELLA REED *v.* MAYOR AND CITY COUNCIL OF BALTIMORE
## [No. 19, October Term, 1936.]

116

*Decided November 19th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Sigmund Levin,* with whom was *Clay Jewell* on the brief, for the appellant.

*J. Francis Ireton, Assistant City Solicitor,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.
Della Reed, appellant herein, brought suit in the Balti-

more City Court against the Mayor and City Council of Baltimore, Gregorios Diacamacos, Basil Dezes, and Paraskevy Dezes, tenants, and Nicholas Karangelen and Peter Kavakos, subtenants, of the first-named defendant, to recover damages for personal injuries sustained by her while upon one of the walks or passageways of Cross Street Market in Baltimore City.

The declaration alleges that on July 9th, 1935, Diacamacos, Basil and Paraskevy Dezes, were tenants, while Karangelen and Kavakos were subtenants, of the municipal corporation of certain stalls in Cross Street Market, a public market of the municipality, bounded by Light, Charles, Cross, and Weyler streets, said stalls being located on the west side of Light Street and adjacent thereto; that they were used by defendants for display and vending of foodstuffs to the public for profit, Karangelen and Kavakos yielding and paying unto Diacamacos, Basil and Paraskevy Dezes, a rental for the use and hire thereof, the latter in turn yielding and paying unto the Mayor and City Council of Baltimore a rental therefor; that for the purpose of purchasing the commodities displayed therein, the public was invited to use the footways and passageways of the market, one of such walks so used by the public being on the east side thereof, and running north and south, the said stalls abutting thereon; that it was the duty of defendants to keep said walk in condition for public travel, but in violation of said duty and with full knowledge thereof, they negligently suffered the same in front of said stalls to be and remain in an unsafe and dangerous condition to persons traveling thereon, in that, prior to and at the time of the injuries complained of, they permitted a raised platform or obstruction to remain in said passageway, and upon the date aforesaid, while plaintiff, exercising due care, was lawfully in Cross Street Market and traversing the walk in front of said stalls, she was caused to strike against and into a platform or obstruction and to fall to the bed of the walk, as a result of which she sustained permanent injuries. General issue pleas having been filed by each group of de-

fendants, issue was joined thereon, and the case came on for trial.

At the conclusion of the testimony offered on behalf of the plaintiff, one of the defendants, the Mayor and City Council of Baltimore, offered five prayers, numbered A, B, C, D, and E, by each of which it sought to have the case withdrawn from the consideration of the jury. The court granted its B prayer, instructing the jury that there was no evidence in the case legally sufficient to prove any negligence on the part of the Mayor and City Council of Baltimore or for which it was responsible, and, therefore, the plaintiff was not entitled to recover. The action of the trial court in granting this prayer raises the sole exception found in the record. The court did not rule on its remaining prayers, and, although it denied the prayers offered by the other defendants, these need not be considered, since after the case was withdrawn from the jury's consideration by the granting of the city's B prayer, the plaintiff submitted to a *non pros.* as to the remaining defendants. Judgment on the jury's verdict in favor of the appellee was subsequently made absolute, and from this the present appeal is taken. It, therefore, becomes necessary to consider the evidence offered by the plaintiff with a view to determining whether the same was sufficient to support a finding of primary negligence as against the appellee. Preliminary to this inquiry, however, we deem it important to make reference to certain legal principles which we feel are determinative of the status of the parties hereto.

It seems clear that appellee, in owning the market and deriving a revenue from its stalls by way of rentals, was acting within its proprietary or private character, and would, therefore, be liable for negligence, assuming that, under similar facts and circumstances, liability would exist as against an individual. *Mayor and Aldermen of the City of Savannah v. Cullens*, 38 Ga. 334; *Barron v. City of Detroit*, 94 Mich. 601, 54 N. W. 273; 18 *R. C. L.* "Markets," sec. 10; 4 *Dillon Municipal Corporations*, p. 2915; *McQuillin, Municipal Corporations* (2nd Ed.), p. 2848; *Zboyan v. Newark*, 104 N. J. Law, 258, 140 A. 225.

Moreover, since the purpose of the market is for public use, if the city has reserved to itself the power of controlling and keeping open the passageways therein, it would be liable to any one who, while using due care, sustained an injury because of the neglect or default of the city in keeping such passageways reasonably safe for public travel. Its duty to the public using the market is in this respect comparable to that of a department store owner toward his patrons and customers who are invited to enter it for the purpose of dealing. In such a case, the appellant would have been an invitee of the city, to whom it owed the duty of keeping its walkways in a reasonably safe condition for public travel. *Fulton Bldg. Co. v. Stichel,* 135 Md. 542, 109 A. 434; *Bethlehem Steel Co. v. Variety Iron & Steel Co.,* 139 Md. 313, 115 A. 59; *Benesch & Sons v. Ferkler,* 153 Md. 680, 139 A. 557; 3 *Cooley on Torts* (4th Ed.) vol. 3, sec. 440.

If believed by the jury, the testimony offered by the plaintiff was sufficient to enable it to find that Cross Street Market was owned by appellee, and the market building extended to the westerly curb of Light Street, the market being equipped with numerous stalls which the city leased to various persons from which to sell foodstuffs. Many of these stalls are located in groups of four, and between these groups are passageways for pedestrians, while others are located immediately west of the curb line on the west side of Light Street longitudinally, in groups of two each, and between these two groups is a sidewalk or footway from five to six feet in width, which might be described as a continuation of the sidewalk on the west side of Light Street. Among the pairs thus grouped are stalls 295 and 126 and stalls 125 and 210. The two pairs are separated by a short passageway between the curb and the last-mentioned footway. Stalls Nos. 125, 126, and 295 were leased by the city to Diacamacos, Basil and Paraskevy Dezes, at an annual rental of $46 each, and by the latter subleased unto Karangelen and Kavakos, who on the date of the plaintiff's injuries were occupying them, the rear thereof being adjacent to the west curb of Light

Street, while they fronted on the passageway previously mentioned. There were also windows in the rear of the stalls on Light Street. The passageway is of ordinary cement floor construction and was not leased by the city, which by section 6, subsection 15, of article 1 of its Charter (1927) is given power and authority to erect, regulate, control, and maintain markets and stalls within its limits, and to sell or lease the same, and in pursuance of this authority it has enacted ordinances, in which, *inter alia*, it is provided in article 27, section 61, of its Code, that "the said avenues (in the public markets) "and all other avenues or footways of said market-houses shall be kept free and clear of and from all obstructions whatsoever, under a penalty of one dollar for each and every offense."

The city markets are under the supervision of a market superintendent, a municipal official, and a market master is stationed at the Cross Street Market and maintains an office therein. Apparently these employees recognized it as their duty to enforce the regulation above mentioned, for the superintendent of markets testified that the tenants of market stalls were not permitted to place anything within the passageways, and he further stated with reference to the regulation that they ordered obstructions removed daily, but a good many put them back; that a market master, having so many things to do, could not be blamed if such obstructions were replaced in the passageways after he left.

On July 9th, 1935, at 2:30 in the afternoon, a regular market day, appellant went to Cross Street Market, and while there purchased a soft drink at stall 126, and on leaving that stall entered the walkway previously described as being a continuation of the westerly sidewalk of Light Street, and started in a northerly direction toward Weyler Street. While proceeding thereon near stall 125, she tripped over a platform or obstruction three feet long, two and one-half to three inches in height, and eighteen inches wide, which was constructed of ordinary board and lying flat on the cement walkway, its entire

length being next to stall 125. This platform was placed there by the operator of the market stall, and used by him to stand upon when selling from the stall, and, while not attached to the floor, it had been in the passageway daily on market days for a period of four or five years, and, by such use, had taken on the same color as the walkway upon which it was placed. The plaintiff was not unfamiliar with the market and had frequently visited it previously. In describing her movements and contact with the platform she stated: "I left the milkshake place and walked three or four steps after leaving the milkshake place toward Weyler Street. I was walking toward Weyler Street, and I just took three steps when my foot got caught, and I fell, and I did not know any more. I was tripped, my foot got caught." And on cross-examination she said: "As to the condition of the pavement there that adjoined the stall, I never looked at the ground to see if anything was there, I always look up towards where I am going like I did that time, I did that day. I always looked up. I did not know there was a platform that was right close to this stall and I did not see the platform. I had never seen that platform before. I guess it was just the direction I was walking in. I never had occasion to fall over it before. I did not know it was there and I never looked down when I was walking, I was looking in front of me. I think it was a light day and I think it was plenty of light in the market. * * * I just drank the milkshake and walked ahead. There was light enough to see anything on the ground, plenty of light. I was standing down by the peanut stand, standing in the aisleway and asked for a milkshake. I walked right up to the stall like I was walking right close to the stall." The fall which plaintiff sustained injured her painfully and severely; and while at the time she was injured the market was not overcrowded, many other shoppers were there and some of them were using the walkway in question.

In considering the correctness of the ruling of the lower court in granting the defendant's B prayer, withdrawing

the case from the consideration of the jury, we are required to assume the truth of all evidence offered by the plaintiff, together with all inferences of fact, properly deducible therefrom, which tend to support her contention. Tested by this rule, we are of the opinion that, upon a fair consideration of the evidence, it cannot be said to be of such character that no rational mind could draw a conclusion of negligence on the part of the appellee, and that there was error in granting defendant's B prayer. The city, having by its charter been given power to establish, regulate, and maintain markets and market stalls and to lease or sell the same, availed itself of such privilege, not only by erecting Cross Street Market, but also by ordinance, in the furtherance of such statutory power, providing that the passageways in such market houses should be kept free from all obstructions. It exercised direct control over its officials and employees, to whom it delegated the duty of enforcing those regulations. The city, then, being engaged in a proprietary or private function and having under its control officials and employees to whom was entrusted the obligation of keeping the passageways of the market in a reasonably safe condition for use of its invitees, would ordinarily be liable to one who, using due care, sustained injury by reason of the breach of that duty, and the reasoning of this court in such cases as *Altvater v. Mayor etc. of Baltimore,* 31 Md. 462, 463, holding it free from liability for non-enforcement of its ordinances because it could exercise no control over those whose duty it was to enforce them, would not apply in the present case, and while, in the case of *Baltimore v. Beck,* 96 Md. 183, 53 A. 976, this court was not dealing with the liability of the city to keep the walkways of its markets free from obstructions, the principles there announced would not here be altogether inapplicable.

The superintendent of markets recognized the obligation of the city to keep the walkways of the market free from obstructions, but apparently considered a daily order to remove them as a full compliance with this duty,

yet there was a market master with an office in Cross Street Market, and, in view of the testimony of one of the plaintiff's witnesses that this particular obstruction had remained in the passageway for four or five years, the jury might have found that the city's efforts to keep the passage clear were merely perfunctory.

But appellee contends that, even if the lower court was in error in granting its B prayer, and notwithstanding its prayer seeking a directed verdict upon the ground of contributory negligence was not acted upon below, yet the judgment appealed from should be affirmed, because it appears from the testimony of the plaintiff that she was guilty of contributory negligence, while appellant insists that, as the contributory negligence prayer was not acted upon by the trial court, it is not before us upon this appeal. The case of *Duross v. Baltimore,* 136 Md. 56, 110 A. 98, cited by appellee, would seem to sustain its position upon this issue, and, if we felt that the testimony showed the plaintiff was guilty of contributory negligence as a matter of law, it would seem idle to reverse the judgment of the lower court, which we felt was entirely proper, upon the sole ground that we disagreed with the reason for its rendition. However, the question becomes unimportant in the present case, in view of the conclusion we have reached in respect to the existence of contributory negligence as a matter of law.

Contributory negligence assumes the existence of negligence on the part of the defendant, and is such negligence on the part of the plaintiff as directly contributes to his injury and prevents recovery. Like primary negligence, it is relative and not absolute, and is dependent upon the peculiar circumstances of each particular case. *Siejak v. United Rwys. & Elec. Co.,* 135 Md. 367, 109 A. 107; *State, use of Stumpf v. Balto. & Belair Elec. Rwy. Co.,* 133 Md. 411, 105 A. 532; *Griffith v. Pullman Co.,* 142 Md. 514, 121 A. 362; *Chesapeake & Pot. Tel. Co. v. Merriken,* 147 Md. 572, 128 A. 277; *Balto. & O. R. Co. v. Davis,* 152 Md. 427, 137 A. 30; *Yockel v. Gerstadt,* 154 Md. 188, 140 A. 40; *Ausherman v. Frisch,* 164 Md. 78, 163 A. 852.

And to establish contributory negligence as a matter

of law, the act relied upon must be distinct, prominent, and decisive, and one about which ordinary minds cannot differ; the case must present some such feature of recklessness as would leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men. *Friedman v. Hendler Creamery Co.*, 158 Md. 131, 148 A. 426; *Tri-State Engineering Co. v. Graham*, 158 Md. 328, 148 A. 439; *Storrs v. Hink*, 167 Md. 194, 173 A. 66.

And in the case of *Agricultural Mech. Assoc. v. Gray*, 118 Md. 600, 605, 85 A. 291, this court held that contributory negligence as a matter of law was not to be attributed to an injured plaintiff, because of his presence at a place provided for him, and to which he had been invited by the defendant.

The platform against which the plaintiff stumbled was nearly on the level with the walkway, exactly like it in color, only eighteen inches in width, and against the side of the stall on the extreme edge of the walk which she was invited to use; in addition, other shoppers were also using the walk at that time. While she admitted that the walkway was properly lighted, and that she could have seen the platform had she been looking where it was, we have concluded that, under the particular circumstances in which she was then placed, it cannot be fairly said that her conduct in failing to observe the platform was such as to warrant us in holding as a matter of law that she was guilty of contributory negligence. In the case of *Knight v. Baltimore*, 97 Md. 647, 55 A. 388, 390, Judge Pearce, speaking for this court, said: "Greater watchfulness is required of the driver of a team upon a city street than of a pedestrian upon the sidewalk, and that what would be negligence in law in the former case might not be in the latter." The reason for that statement is plain, and is based upon the fact that the sidewalk in that case, like the walkway in the market, was set apart for the use of pedestrians, and we feel that, in the present case, the plaintiff at least had some right to assume that the walkway was safe for her to travel upon and inspect

the commodities on sale at the various market stalls. In the case of *McCarthy v. Clark,* 115 Md. 454, 81 A. 12, 17, this court was dealing with a case in which a contractor of Baltimore City had left an obstruction upon the sidewalk, and the plaintiff was injured by coming in contact with the same. There, as in the present case, it was contended on behalf of the defendant that the plaintiff would have noticed the obstruction, almost three feet in height, had she paid due attention to the pavement upon which she was walking; and it was apparent that, had she been looking at the pavement immediately in front of her, she would have seen the obstruction, since, after falling over it, she had no difficulty in observing it from the doorstep, but, in that opinion, Judge Urner said: "In the present case there is absolutely nothing to indicate a want of due care upon the part of the plaintiff. She had the right to assume that the sidewalk was safe for pedestrians, and we would not be justified in declaring her guilty of contributory negligence merely because she did not observe, in the obscurity to which she testified, the low dark object over which she stumbled." While the evidence in this case may be sufficient to justify its submission to the jury on the question of plaintiff's contributory negligence, we do not feel warranted in holding it to exist as a matter of law.

The judgment appealed from must be reversed, in order that the case may be tried upon its merits.

> *Judgment reversed, and new trial awarded,*
> *with costs to appellant.*