## JOHNNY'S CABS, INC. *v.* MILLER
[No. 54, October Term, 1951.]

*Decided January 9, 1952.*

18

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*W. Earle Cobey* for the appellant.

*Harold E. Naughton* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment rendered as the result of an automobile accident.

The case comes to this Court on exceptions to the instruction given to the jury and on the refusal of the trial judge to grant the appellant's motion for a judgment N. O. V. based on its demurrer prayer. We will therefore recite the evidence in a light most favorable to the appellee.

On December 4, 1949, Mr. Glenn R. Rawlings, employed by the appellant, Johnny's Cabs, Inc., was driving appellant's taxicab in Cumberland south on Walnut Street, 24 feet in width from curb to curb and paved with brick, he said at a speed of between "15 and 20 miles an hour; not over 20 miles an hour at the most, because I wasn't in any particular hurry * * *." The speed limit on this street was twenty-five miles an hour. The sidewalk on the east side of Walnut Street was seven and eight-tenths feet wide and on the west side was seven and four-tenths feet in width. Crossing Walnut Street, approximately at right angles, is an alley 14 feet in width, unpaved, with no sidewalks, and with a brick gutter four feet in width running through its center. To the west of Walnut Street this alley is known as Vine Place and to the east of Walnut Street as Brown's Alley. In this opinion this alley both to the east and west of Walnut Street will be referred to as Brown's Alley.

Driving south on Walnut Street there is a slight grade up to Brown's Alley. Three houses face on this alley and it is used for vehicular traffic. On the northeast corner of Brown's Alley there is a two story frame house, with a porch about four feet wide on the front which comes out slightly beyond the edge of the Walnut Street sidewalk, which obstructs the view from Brown's Alley to the north. From the southeast corner of Brown's Alley there is visibility for a distance of between 250 to 300 feet north, up Walnut Street.

At about 4 P. M. on that date, the weather being misty, dreary and dark, the mother of Thomas Miller, an infant seven years of age, sent him to a store. A part of his route was west on Brown's Alley. Cars were parked on both sides of Walnut Street fairly close to the intersection with the alley. The child was hurrying or running west on Brown's Alley according to witnesses. When he came to the intersection with Walnut Street, he said he stepped up on the curb and looked up and down Walnut Street. He said he did not see any cars coming. He went straight across Walnut Street, from its southeast corner to its southwest corner as it intersects with Brown's Alley. He did not say whether he was running or walking. He never saw the cab. He was hit about in the middle of Walnut Street or beyond by defendant's cab, operated by Rawlings. Due to the fact that cars were parked on both sides of Walnut Street, the cab about fourteen feet in length was moving down the center of that street. There was some evidence, which for the purpose of this opinion we must assume as true, that the right front fender of the cab hit the child. The driver said he saw the child when he came past the end of the house and when the front of his cab was even with Brown's Alley. He said: "* * * there was just a more or less of a blur and Thomas came running out of the alley; he was running at full speed, he hit the cab as the front end of the cab was approximately even with the intersection." As the cab hit the child, he applied his brakes as quickly as possible and

swerved to the left. There was evidence that the impact threw the child in the air and his body came to rest, after moving through the air and on the ground, at a distance of fifty-four feet from the intersection of Brown's Alley and Walnut Street and at a distance of five or six feet from the west curb of Walnut Street.

The accident occurred in a highly populated residential section of Cumberland and one block from a school. There were no crosswalk markings on Walnut Street at its intersection with Brown's Alley and no lights or traffic controls at the place of the accident. The driver of the cab testified that he had previously been employed as a bus driver. When asked whether he was familiar with this intersection, he replied: "I knew it was there, as far as being off Walnut Street." A police officer testified that the skid marks were in the middle of Walnut Street and "if there was a crosswalk across here it would be just as leaving the intersection and continued for about 9 feet. * * * Q. Through the center of the street? A. Yes, sir, and bearing slightly to the left." The driver said the cab was a 1948 Plymouth in good condition.

In the instruction to the jury the trial judge referred to Code 1947 Supplement, Article 66½; Section 181; Section 2 (a), subsection 9; and Section 2 (a), subsection 20; and said: "These statutes give the infant plaintiff a preference at the intersection * * *." The appellant claims that the infant had no right of way at this intersection and with this contention we agree. The term "right of way", as defined by Code, Article 66½, Section 2 (a) (44) is: "The privilege of the immediate use of the highway."

Prior to 1943, the pedestrian had the right of way "at street crossings". 1939 Code, Article 56, Section 235. Therefore, any decision of the Court before 1943 is not controlling on this question of pedestrians' right-of-way, now before us in this case. Code, Article 66½, Section 181; Acts of 1943, Chapter 1007, Section 181, provides: "(Pedestrians' Right-of-Way at Crosswalks.) (a) All

pedestrians shall have the right-of-way at street crossings in the towns and cities of this State, except where traffic is controlled at such crossings by traffic officers, or traffic control devices. Between street crossings in such towns and cities, vehicles shall have the right-of-way." "There is no statutory definition of 'street crossing' other than the definition of 'crosswalk'." *Bond v. Forthuber*, 198 Md. 476, 478-479, 84 A. 2d 886, 887. Article 66½, Section 2 (a), subsection 9, *supra,* Acts of 1943, Chapter 1007, Section 2 (a) (9), provides: "(Crosswalk.) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other marking on the surface or that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections." As hereinbefore stated there were no crosswalk "markings" on Walnut Street at this intersection, and no "sidewalks" on Brown's Alley. Therefore there could be no "prolongation" of the Brown Alley sidewalks across Walnut Street at this intersection and the infant had no right-of-way or preference at this intersection. The instruction to the jury was erroneous in this respect.

With cars parked on both sides of this twenty-four foot street, it was necessary to drive the cab, about six feet in width, with at least part of it in the middle of Walnut Street. Code, 1947 Supplement, Article 66½, Section 162. Even if the cab had been as far to its right as possible, under all the testimony as to the point of impact, the collision would have occurred.

Code, 1947 Supplement, Article 66½, Section 2(a) (20) defines "Intersection" as: "The area embraced within the prolongation or connection of the lateral curb lines, or if none, the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict." It seems to be admitted in this case that Brown's Alley was a public alley. Compare *Snibbe v. Robinson,* 151 Md. 658, 135

A. 838, 50 A. L. R. 280. The Maryland Motor Vehicle Act does not define "highway". It is said in *I Elliott, Roads* and *Streets* (3rd ed. 1911) section 27, page 31, title "Distinction between streets and alleys": "If the alley is a public one, it is a highway, and, in general, is governed by the rules applicable to streets." Section 28: "Whatever may be the dimensions of a way, if it be opened to the free use of the public, it is a highway; nor is its character determined by the number of persons who actually use it for passage. The right of the public to use the way, and not the size of the way or the number of persons who choose to exercise that right, determines its character." See also *Parsons v. Wright*, 1943, 223 N. C. 520, 27 S. E. 2d 534; 60 *Corpus Juris Secundum*, Motor Vehicles, Section 351, page 833; 25 American Jurisprudence, "Highways", Section 5, page 340. It therefore seems that the area where Brown's Alley crosses Walnut Street is embraced in the statutory definition of "Intersection", Article 66½, Section (2) (a) 20, *supra*.

Code 1947 Supplement, Article 66½ Section 157 (e), provides: "The fact that the speed of a vehicle is lower than the foregoing *prima facie* limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection except through highways, * * * or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway condition, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care." There is no evidence here as to special hazards existing. There was no special highway condition. The weather that day except for being dark, dreary and misty was not unusual. There is no testimony here that visibility was impaired by the weather.

The appellant in this Court abandoned all claim of contributory negligence on the part of this seven year old child.

The appellee relies on the case of *Miller v. Graff,* 196 Md. 609, 616, 78 A. 2d 220, 222. There, the infant, 4 years of age, and 125 feet from an intersection ran into the street and was struck by a taxicab. We held in that case that there was sufficient evidence of primary negligence to submit the case to the jury. There was credible evidence that the cab was traveling about 45 miles per hour where the maximum limit was 25 miles. This occurred in a residential district with two schools only two blocks away. On the street on which the accident happened was a sign "Slow, School". There was evidence that one of the blood spots, which indicated where the child was struck, was about 55 feet from one end of the skid marks. This Court said in that case: "The duty which a motroist owes to pedestrians is ordinary care and caution in such amount as the particular situation demands. *Havermale v. Houck,* 122 Md. 82, 89, 89 A. 314. It is contended that the taxicab was being driven in the westbound lane, and that no negligence can be inferred from excessive speed, since the accident did not happen in a street intersection. While it is generally true that a motorist must exercise greater vigilance when approaching a street intersection than when driving between intersections, yet even between intersections a motorist must keep a lookout for any children who may suddenly come out into the street in front of him. As we said in *Heffner v. Admiral Taxi Service,* 196 Md. 465, 77 A. 2d 127, the public highways are for the use of everybody, and no one is barred from their use by age or physical condition. If a child darts out in front of an approaching automobile when the driver is going at a reasonable rate of speed and obeying the rules of the road, so that even with the exercise of due diligence he is unable to avoid running into the child, he is not liable for any injuries the child may sustain; but if the driver is going at an excessive speed, he cannot escape liability by saying that the child ran in front of the car so suddenly that the accident was

unavoidable. *Henkelmann v. Metropolitan Life Insurance Co.,* 180 Md. 591, 596, 26 A. 2d 418."

It is difficult here to find any negligence on the part of the appellant. *Billmeyer v. State,* 192 Md. 419, 64 A. 2d 755, 757. Here, there is no testimony to contradict that of the cab driver that the speed of the cab was not over twenty miles an hour, well within the lawful limit. Appellee admitted in this Court that the only evidence of negligence was speed, and the only evidence that the cab was going more than fifteen or twenty miles per hour as it approached this intersection was the testimony that the driver picked the boy up from the street 54 feet from the intersection. The body was in the air for part of this distance and then moved the remaining distance after it hit the ground. Skid marks of only 9 feet are not necessarily evidence of speed of over fifteen or twenty miles per hour. *Bozman v. State,* 177 Md. 151, 154, 155, 9 A. 2d 60; *State v. Belle Isle Cab Co.,* 194 Md. 550, 557-558, 71 A. 2d 435, 438. There is no evidence here from which the jury could find that a seven year old boy running across a street in collision with the front of a taxicab, going fifteen miles an hour, would not be thrown fifty-four feet before coming to rest. To find the contrary would be pure speculation and conjecture. This is merely a theory and an assumption which has no basis in any of the testimony, or in any proper inference therefrom. Such a speculative and conjectual theory should not have been submitted to the jury. *Koester Bakery Co. v. Poller,* 187 Md. 324, 332, 50 A. 2d 234. The judgment N. O. V. should have been granted.

*Judgment reversed, with costs.*