STATE, USE OF BLOCK *v.* MILLER ET AL.
BLOCK, ADMINISTRATRIX *v.* MILLER ET AL.

[No. 123, October Term, 1951.]

522

*Decided March 7, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Julius G. Maurer,* for appellants.

*Jesse Slingluff, Jr.,* with whom were *Frank T. Gray* and *Piper & Marbury,* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

On April 5, 1949, Light Street, between Barre and Conway Streets, in the City of Baltimore, was a street 60 or 65 feet wide, running in a northerly and southerly direction. In the center were electric light poles. On the east were piers and wharves of the Baltimore Steam Packet Company, known as Pier 10. The passenger entrance to Pier 10 was about 50 or 60 feet south of Barre Street. There were no sidewalks on the east side of Light Street paralleling Pier 10. There were no white lines or other marks of a crosswalk at the intersection of Barre and Light Streets. About 50 feet south of the passenger stairway leading into Pier 10, there were markings in the street in front of Pier 16,

and at Light and Conway, which was about a city block from the stairway at Pier 10, there was a marked crosswalk. The passenger entrance to the pier was about 12 to 14 feet wide, and, opposite this entrance, and in the middle of the northbound streetcar tracks, were six or seven little pieces of metal, like a row of buttons, crossing the northbound track, at the place where the cars used to stop when they were running on Light Street.

At 7:45 in the morning of April 5, a bus of the Baltimore Transit Company was stopped opposite the entrance to Pier 10, loading and discharging passengers. The bus driver heard a tractor-trailer on his left stop suddenly. He looked up, and saw a man lying in the street. The driver of the tractor-trailer said that this man ran into the side of his vehicle. A police officer came from Pier 10 and found the man, who was George Block, lying in front of the stairway in the middle of the car tracks. He said he was in "the unmarked crossway" in front of the passenger stairway leading to the ticket office on Pier 10. He said this unmarked crosswalk was used daily or frequently for passengers to go back and forth across the street to get to the streetcar or bus, or to sail on the boat. Traffic was always heavy there in the morning, and the officer testifying was detailed there to direct it every afternoon from 4 to 6. The place where the deceased was found was about three-quarters of the way over the northbound lane, and about 10 or 20 feet north from the bus, and about three feet to the left of it. He was lying, when first seen, at the rear wheels of the tractor, or behind the tractor by the trailer. It was testified, by both the bus driver and the officer, that when the bus would stop by the pier, all other traffic would customarily move by it on the left. At times, when traffic was heavy, an officer would direct it, but at this particular time, an officer was not directing traffic.

Suits were brought by the widow and children and the administratrix of the deceased against the driver and

owner of the tractor-trailer. These suits were tried together in the Baltimore City Court, and, at the conclusion of the plaintiffs' case, the court granted prayers offered by the defendants, directing verdicts in their favor because of a lack of legally sufficient evidence against them. In giving its reasons for this act, the trial court said: "* * * I have ruled the way I did because there is no evidence of any negligence on the part of the driver of the tractor-trailer; we have no witnesses who can tell us how the accident happened; there is no evidence of negligence in the operation of the truck or excessive speed * * *." The appellants appeal here from the judgments rendered on these verdicts.

Their chief contention is based upon the facts that the stairway of Pier 10 was prominently marked "Entrance", no vehicles were parked in front of it, the bus was standing at this entrance, and out in the northbound lane, between the car tracks, where the tractor-trailer passed the standing bus, there were a number of metal plates fixed to the surface of the highway. From these circumstances, appellants contend that there was a crossway or street crossing over which pedestrians would have the right of way, that the deceased was in this street crossing, and, therefore, the fact that he was there struck by the tractor-trailer is sufficient proof of negligence on the part of the driver of the latter to permit the case to go to the jury. We assume, for the purpose of passing on this question, that this fact alone might justify the submission of the case to the jury, but we do not wish to be understood as so deciding. Other factors might be present which would not permit such a conclusion.

The crosswalk sections of Sec. 181 of Article 66½ of the Code have been recently before this court in two cases heard this term. In the first of these, *Bond v. Forthuber*, 198 Md. 476, 84 A. 2d 886, we found it unnecessary to decide whether there was an unmarked crosswalk as contended, because the accident did not happen within any space which could conceivably have

been held to be a crosswalk. We did, however, say, with reference to the provision about the right of way of pedestrians at street crossings: "There is no statutory definition of 'street crossing' other than the definition of 'crosswalk', 'Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other marking on the surface or that portion of a roadway ordinarily included within the prolongation or connection of the lateral lines of sidewalks at intersections.'" In the other case, *Johnny's Cabs, Inc. v. Miller,* 199 Md. 16, 85 A. 2d 439, there were no crosswalk markings on the street where the accident happened, and there were no sidewalks on the intersecting alley. We held that there could be no prolongation of the non-existent sidewalks, and therefore there was no unmarked crosswalk there. In that case, the injured boy came out of the alley and was struck while going across the street. There was evidence that the alley was heavily traveled, and there was an intersection there, but the mere fact that there was such an intersection of a street with an alley without sidewalks, did not produce an unmarked crosswalk over the street.

In the case before us, there was no intersection, and, while it is true that the evidence showed passengers from the boats would cross the street at that point to get on the streetcar, when one was running, and that there was a streetcar stop there, as indicated by the markings between the tracks, there is nothing in the statute to make this an *unmarked* crosswalk.

Appellants contend that this was a *marked* crosswalk because of the little stubs or metal buttons in the center of the car tracks which indicated where the streetcar was to stop. Whatever their purpose, and whoever placed them there, these small pieces of metal could not be held to distinctly indicate a portion of a roadway for pedestrian crossing. The usual method is, of course, by lines painted on the pavement. The statute does not confine the marking of crosswalks to lines, but provides for "other marking on the surface". No one, seeing

these objects fastened in the middle of the car tracks, and nowhere else, would be justified in thinking they were intended to indicate a crossing for pedestrians. We are, therefore, constrained to find that at the point of impact, the deceased was neither in a marked crosswalk, nor in an unmarked crosswalk, and that he therefore did not have the right of way over the tractor-trailer. The appellants say that if this is not so, there was no way provided for passengers from the pier to get across this busily traveled street with no sidewalk, but, as we have shown, there is a marked crosswalk 50 feet south of the stairway, and one about a city block from it at Conway Street, and at Barre Street, about 60 feet to the north, there was an intersection which would provide an unmarked crosswalk. However, whether safe routes had been marked out by the authorities for pedestrians to cross the street or not, that does not entitle them by custom or habit to establish a crosswalk which then gives them the right of way.

Since the deceased did not have the right of way, and since there is no evidence whatever as to how he came to his death, except that the driver of the tractor-trailer said he ran into the side of his vehicle, there was clearly nothing from which the jury could find that the driver of the tractor-trailer was negligent. We do not even know where the deceased came from, or which way he was going, and, in such a situation, the jury cannot be permitted to speculate or guess, to the detriment of the defendants. The trial court was clearly right in granting defendants' prayers.

*Judgments affirmed with costs.*