## DENBOW *v.* CHESAPEAKE & POTOMAC TELEPHONE COMPANY OF BALTIMORE CITY

[No. 140, October Term, 1951.]

610

*Decided April 3, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Z. Townsend Parks, Jr.,* for the appellant.

*R. Dorsey Watkins,* with whom were *Piper & Marbury* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

The appellant, Roger Denbow, entered suit against the defendant, appellee, in tort for damages sustained by him in stepping into a manhole left open and unguarded by employees of the appellee. The jury returned a verdict in favor of the appellant in the amount of $15,000.00. However, the trial judge granted a Motion N. O. V. and entered judgment for the appellee. From that judgment the appellant appeals.

Mr. Denbow in returning from work each day customarily stopped at a tavern near his residence for a glass of beer. About 4:30 P.M. on the afternoon of August 1st, 1950, he parked his automobile on Sanner Avenue off of Belair Road, about one half a block from his home. He then went as usual to the Spot Tavern, 4905 Belair Road, which is separated only by a public alley from Sanner Avenue. He drank two glasses of beer, staying in the tavern not over fifteen minutes. The afternoon was clear, bright daylight saving time. He walked out of the tavern, turned to the right and walked about 10 feet on the sidewalk up Belair Road toward Sanner Avenue to the public alley. As he came to the end of the Spot Tavern which bordered the alley, two men were working there, Mr. Franklin C. Butterbaugh, employed by the appellee, and his helper. Mr. Butterbaugh was writing on a piece of paper against the coca-cola sign on the wall at the end of the tavern. This attracted Mr. Denbow's attention. Mr. Denbow stepped off the curb, six inches high. The helper stepped back. Mr. Denbow then stepped back out of the helper's way and took another step forward into a

manhole left open by the employees of the appellee. On cross-examination, Mr. Denbow said if he had been looking straight ahead as he approached the alley he did not think he would have seen the open manhole and the cover which had been removed. He further said that if at that time he had looked down he thought he could have seen the open manhole and the cover. The distance from the curb of the alley, off which Mr. Denbow stepped, to the manhole was 38 inches. The sidewalk of the Belair Road at that point was 10 feet in width. The manhole was about 27 inches in diameter and the cover was about 3½ inches thick. Although not brought out in the testimony, in the argument in this Court it seemed to be agreed that the width of the alley was about 8 to 10 feet.

Mr. John L. Effinger, a florist, whose place of business was directly on the corner of Belair Road and Sanner Avenue and between the public alley and Sanner Avenue, testified that he saw the telephone men working on this manhole the day of the accident and the previous day. He could see the manhole through his open front door. They had an iron pipe guard about 3 feet high around it all day. It was removed shortly after four o'clock in the afternoon. The man picked it up and put it in his small truck on Sanner Avenue. He said: "And then I saw two men—I saw one man standing up with his hand and piece of paper on the coca-cola sign that is on the side of—side wall of the tavern making some notations, and I thought possibly there was a man down in the hole giving him some measurements for material that he had to use. That was my impression. Now, what he was doing I don't know, but the manhole was off—the cover was off and the manhole was open then. * * * A little while—a very short while after that I happened to look out again and I saw Mr. Denbow in the manhole." He did not actually see Mr. Denbow fall in the manhole.

Mr. Butterbaugh, employed by the appellee, and called as a witness by the appellant, testified that with his

helper he had been working at this manhole the day of the accident and the previous day. He was in charge of the work. They had a guard rail, with three sides and a chain across the front painted yellow around the hole. He took the guard rail down and he and his helper went back to the truck. He said there was a new type of form which "had come out" which required certain measurements in the manhole. He had misplaced the form and did not find it again until after he had closed the manhole. He went back to his "hole cart" and after he had found the form, they came back to re-open the manhole. He did not bring the guard rail with him at that time. His helper went down the hole, nine feet in depth, to make the measurements. He stood guard over the top of the hole. After the helper came out of the manhole and gave him the measurements he told the helper to put the manhole cover on the opening. In the meantime he walked over to the coca-cola sign. Instead of the helper putting the manhole cover on "he picked the manhole cover hook up and followed me over to the coca-cola sign". He started making out his report "and after he followed me over I realized that he had not up to that time put the manhole cover back on, so I turned toward the manhole opening and it was still open and I told him to walk back and put the cover on the manhole, [the cover being at the coca-cola sign] and watched him until he got to the manhole, and he hesitated for a moment as if he had it in mind to place the hook underneath the cover. I didn't actually see him slide the cover; I didn't actually see him engage the hook in the cover but I saw him at the hole. * * * As he got to the manhole cover —as soon as he got there [sort of down the alley, he walked over and hesitated with his back toward me]— as I say I didn't see him actually draw the manhole—I didn't see him engage the hook into the cover, the man-hole cover, like simultaneously he got there I turned around and proceeded with my writing from the measure-ments he measured." He said there must have then been some commotion. He said: "I turned around, it

was less than a minute's time after I started writing again and I saw Mr. Denbow sitting on the manhole, that is to say to the side of the manhole and he did have one hand supporting himself on the rim." When asked by the trial judge whether he then made any comment to the helper, he replied: "I do remember saying something to the effect that, 'I told you'—like 'I told you to put the manhole cover on when you came up.' " The helper was in the Armed Services at the time of the trial.

There is no doubt in this case that the appellee was guilty of such primary negligence to warrant the submission of that issue to the jury. In *Citizens Savings Bank v. Covington*, 174 Md. 633, 199 A. 849, the bank maintained in, and flush with, the sidewalk of Eutaw Street in Baltimore a sheet iron door which afforded access to the cellar under its building. It was raised by an iron handle in the shape of an inverted U which was designed to fall of its own weight into place. About eleven o'clock at night the plaintiff, Covington, when walking on Eutaw Street stepped on the cellar door and her foot caught in the iron handle which was sticking up and she fell. It was said in that case, 174 Md. at pages 637 and 638, 199 A. at page 851: "There is no question here of the right of the defendant to maintain a cellar-door in the sidewalk, but it is a privilege to be enjoyed without danger of injury to pedestrians, who are only required to use ordinary care in their use of the street. The owner is not required, in order to impose liability, that he should know of the misplaced handle, used in the raising or lowering of the door. If the device was so constructed or left in such condition that it may be disturbed by the mischievous or malicious, then the negligence is imputable to the owner. *Calder v. Smalley*, 66 Iowa 219, 23 N. W. 638. We, therefore, are of the opinion that the trial court properly refused to take the case from the jury for want of legally sufficient evidence of the defendant's negligence or failure of duty." The Court pointed out therein that the question in all

such cases is one of due and proper care and all that is required of the plaintiff is due and ordinary care to avoid injury and the same rule would apply as to coal holes and areaways in sidewalks. "See note 19 Ann. Cas. 466." The Court there held there was no evidence to warrant an instructed verdict on the grounds of contributory negligence. In the case now before this Court the appellee, recognizing the danger of the open manhole, kept it guarded with a guard rail for two days. Its employees then removed the guard rail, left the hole totally unprotected, attracted the attention of the pedestrian, and one of them walked toward him, causing him to step back. There was certainly such a question of due and proper care on the part of the appellee here presented to justify its submission to the jury.

The remaining question is whether the appellant was guilty of contributory negligence as a matter of law. The appellee argues that the same degree of care should have been exercised by the appellant in looking for obstructions in the pavement while crossing this narrow alley as is required of persons driving a vehicle on a highway to look for obstructions in the street, as in *Knight v. Baltimore City,* 97 Md. 647, 55 A. 388; *Kaufman Beef Co. v. United Railways Co.,* 135 Md. 524, 109 A. 191, 9 A. L. R. 476; and *Miller v. Baltimore,* 161 Md. 312, 157 A. 289. With this contention we do not agree. In fact, in *Knight v. Baltimore City, supra,* it is said, 97 Md. at page 654, 55 A. at page 390: "Without committing ourselves to the ruling made by the Iowa Court in that case [*Matthews v. City of Cedar Rapids,* 80 Iowa 459] upon the particular instruction under consideration, we concur in its statement that greater watchfulness is required of the driver of a team upon a city street, than of a pedestrian upon the sidewalk, and that what would be negligence in law in the former case might not be in the latter." See *Baltimore v. Poe,* 161 Md. 334, 338, 339, 156 A. 888. In the case of *Irwin v. Sprigg,* 6 Gill, 200, the plaintiff stepped into an open areaway in front of appellant's house, designed to light

his cellar window. This Court in that case quoted the following from the opinion of Lord Ellenborough in the case of *Batterfield v. Forrester*, 11 East. 61: "A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right." In that case apparently there was no prayer for a directed verdict on the grounds of contributory negligence but this Court approved the prayer submitting the question of contributory negligence to the jury. In *Burke v. Baltimore*, 127 Md. 554, 96 A. 693, a trench four inches deep and six inches wide was built by the City around Richmond Market. The appellant fell just over the door sill in the trench about 1 P.M. in the day. No question of contributory negligence was raised. This Court held that the question of primary negligence on the part of the City should have been submitted to the jury. In *M. & C. C. of Baltimore v. Bassett*, 132 Md. 427, 104 A. 39, a woman walked from the curb to the car line, a distance of fifteen or twenty feet at the southeast corner of North and Moreland Avenues, in Baltimore, in the afternoon. In direct line from the corner to the entrance of the car waiting to take on passengers, and about midway between the curb and the car, was a hole in the street bed in the shape of a bowl, three to five feet in diameter and two to four inches deep. To board the car a person either had to jump over this hole, which had been there for at least a year, or walk around it. The plaintiff, after she left the curb and while looking for automobiles in both directions, stepped into the hole and fell and was injured. This Court there held that the question of contributory negligence was for the jury saying that pedestrians have the right to assume that they will not be subjected to such danger but that one is not authorized "to shut his eyes to open and obvious dangers, and pay no attention, whatever, to the condition of the highway in which defects may, although they should not, exist."

In *Duross v. Mayor and City Council of Balto.*, 136 Md. 56, 110 A. 98, plaintiff was walking along Ramsay Street and when he came to the crossing on Furrow Street he saw a board which he said he thought was put there to avoid the water and mud. He stepped on the board and was injured. This Court, in finding him guilty of contributory negligence, as a matter of law, said, 136 Md. at page 62, 110 A. at page 100, in referring to *Knight v. Baltimore City*, 97 Md. 647, 55 A. 388 *supra*: "The Iowa Court held that in fixing his gaze upon the display of goods in the show window, 'the plaintiff was answering the manifest design of their being placed there, and that as placed, they were a standing invitation to passers by to view them' and that when persons are passing along the sidewalks of a city, allowance must be made for their attention being attracted to those things displayed for the very purpose of so attracting it, and that though they may be negligent as a matter of fact in permitting their attention to be thus attracted, the law will not arbitrarily determine them to be so. Our Court was careful not to commit itself to this ruling in its entirety; but even if it should be accepted to the fullest extent it would have no bearing upon the facts of the case at bar. There is not a particle of testimony tending to show that the attention of appellant was drawn away from what was in front of him. Indeed it was necessary for him to look ahead of him in order to walk on this narrow plank. It has nowhere been said that a pedestrian is not bound to use his eyes in crossing a public street, especially one in process of being paved, with every mark of incompleteness apparent. Indeed it is admitted that appellant saw the board before he stepped on it; and a loose board at a city crossing was notice to him of the necessity of using care before attempting to walk on it. Of course there was plenty of room to get by without stepping on it at all." In the instant case, there was credible testimony that appellant's attention was attracted elsewhere. There

was nothing to put Mr. Denbow on notice that the manhole was open.

In *Reed v. Baltimore*, 171 Md. 115, 188 A. 15, the plaintiff in the afternoon, about 2:30 P. M., went to Cross Street Market and on leaving the market with which she was familiar, entered a walkway which was a continuation of the westerly sidewalk of Light Street. While proceeding thereon she tripped over a platform or obstruction three feet long, two and one-half to three inches in height, and eighteen inches wide, constructed of ordinary board and lying flat on the cement walkway, its entire length being next to a market stall. This Court there held that the plaintiff's conduct in failing to observe the platform was not such as to warrant the holding that she was guilty of contributory negligence as a matter of law.

As to the out-of-state cases on the subject: "Liability for injury by stepping or falling into opening in sidewalk while doors were open or cover off", these are well annotated in 70 A. L. R. beginning at page 1358, where it is said: "This annotation, as the title indicates, is confined to cases wherein persons are injured by falling into an areaway, vault, coal hole, cellar way, or other opening in the sidewalk, which was open and uncovered at the time of the accident." With an extensive review of the cases under the heading "Contributory Negligence" it is said at page 1388: "The doctrine that reasonable care which the law exacts of all persons, in whatever they do involving the risk of injury, requires travelers on the sidewalks of public streets to look where they are going; but this does not necessarily mean that a pedestrian is required to be constantly watching for openings in the sidewalk. The pedestrian has the right to assume that the sidewalk is in a reasonably safe condition for travel, and to act on that assumption. If there is a conflict of testimony, or for any cause there is reasonable doubt as to the facts, or as to the inferences to be drawn from the facts established by the evidence, the contributory negligence of the pedestrian is a ques-

tion for the jury." It seems useless to prolong this opinion with a review of these out-of-state cases. See also 19 Ann. Cas. 466, referred to in *Citizens Savings Bank v. Covington,* 174 Md. 633, 199 A. 849 *supra.*

Here, appellant was crossing in the crosswalk (*Johnny's Cabs, Inc. v. Miller,* 199 Md. 16, 85 A. 2d 439) a narrow alley which he was accustomed to cross every day and where others crossed. He was familiar with the curb and the pavement of the alley. A careful person would not ordinarily look down at the pavement under such circumstances. He was required to look to his right and left to avoid traffic. According to the testimony in the case, even if he were looking straight ahead it was doubtful whether he could have seen the open manhole. If he had looked down he might have seen it. There was evidence that his attention was attracted elsewhere by the very persons whose duty it was to guard the manhole as he stepped off the sidewalk and down over the curb. He was required to step back out of the helper's way before he stepped forward in the manhole. Whether this case be regarded as a sidewalk case, as in *Reed v. Baltimore,* 171 Md. 115, 188 A. 15, *supra,* or as a street crossing case, as in *Baltimore v. Bassett,* 132 Md. 427, 104 A. 39, *supra,* we are not warranted in holding contributory negligence of the appellant to exist as a matter of law. The judgment will therefore be reversed.

> *Judgment N. O. V. reversed with costs, and judgment entered on the verdict of the jury for $15,000.00, for appellant against appellee, with interest and costs.*